P. H. BARRY ET AL., MANAGERS OF IMPEACHMENT,
v. STATE OF NEBRASKA, EX REL. GEORGE W.
DOANE.

FILED APRIL 17, 1894.   No. 6575.

1. **Expenses of Impeachment**: DUTY OF AUDITOR OF PUBLIC
   ACCOUNTS. The duty of the state auditor of public accounts, to
   audit and allow or disallow claims for expenses incident to the
   impeachment of certain officers and ex-officers of the state, was
   not and could not by joint resolution be devolved upon a board
   of managers intrusted with the management of such impeach-
   ment proceedings.

2. **Mandamus to Managers of Impeachment.** As there was
   no duty specially enjoined by law upon the board of managers
   aforesaid, resulting from an office, trust, or station, such board,
   by *mandamus*, could not be compelled to act in the performance
   of an alleged duty which, in reality, was by law specially de-
   volved upon a designated public officer.

ERROR from the district court of Lancaster county. Tried
below before STRODE, J.

*M. B. Gearon* and *Steele Bros.*, for plaintiffs in error.

*A. J. Sawyer, contra.*

RYAN, C.

The proceedings in error in this case are brought into
this court for the review of an order of *mandamus* issued
by the district court of Lancaster county. The findings of
that court and the order complained of were as follows:

"1. That the legislature of the state of Nebraska, at the
twenty-third session thereof, in joint convention, adopted
articles of impeachment against John C. Allen, secretary of
state, and other executive officers of the state of Nebraska,
and also against Thomas H. Benton, ex-auditor of public
accounts of said state, and against other ex-officers of the

said state, and presented the said articles of impeachment to the supreme court of the state of Nebraska for a trial thereon.

"2. That the said joint convention appointed the said P. H. Barry, C. D. Casper, and George R. Colton, respondents, a board of managers to prosecute said articles of impeachment, and authorized said board of managers to employ counsel to assist in said prosecution.

"3. That said board of managers employed the relator, George W. Doane, as one of the counsel in said prosecution, and agreed with said relator to pay him the sum of $2,500 for such services.

"4. That the legislature of the state of Nebraska made an appropriation of $15,000 to defray the expense of said prosecution, and that more than enough of said appropriation to pay the amount contracted and agreed to be paid to the said relator still remains in said fund unexpended.

"5. That the relator has been paid for his said services the sum of $2,000 and no more, and that the sum of $500 still remains due him and unpaid upon the contract for his services as counsel in the prosecution of said articles of impeachment.

"6. That the services contracted for have been fully rendered by relator, and that said prosecution has been fully and finally determined, and that relator is entitled to said sum of $500 still remaining due him for said services.

"7. That the respondents, acting as such board of managers, have refused to issue a voucher in favor of said relator for the sum of $500 so remaining due to him.

"8. That the respondents, as such board of managers, are authorized by the said joint convention of the legislature of the state of Nebraska to audit all accounts drawn against the funds appropriated for said impeachment proceedings, and that it is the duty of respondents, acting as such board of managers, to audit the relator's account and issue to him a voucher for the sum of $500 still due and

unpaid to him for his services as counsel in the prosecution of said impeachment proceedings.

"9. That the relator has no adequate remedy at law.

"10. On consideration whereof I find the issues in favor of the relator.

"It is therefore considered by me, sitting in chambers as aforesaid, that a peremptory writ of *mandamus* issue against said respondents P. H. Barry, C. D. Casper, and George R. Colton, constituting the board of managers of impeachment appointed by the joint convention of the legislature of the state of Nebraska at the twenty-third session thereof, commanding them, as said board of managers, to issue their voucher in favor of the relator, George W. Doane, for the sum of $500 still remaining due and unpaid to him for his services in prosecuting the articles of impeachment before the supreme court of Nebraska, against John C. Allen, secretary of state, and other executive officers and ex-officers of the state of Nebraska, against whom articles of impeachment were adopted by the joint convention of the legislature at its twenty-third session thereof. * * *

"(Signed)                    J. B. STRODE,
    "*Judge District Court of the 3d Jud. Dist. Neb.*"

To an understanding of the manner in which the respondents were created a board of managers, and their duties as such, there was introduced in evidence a record of the proceedings of both branches of the legislature in joint convention. It will be necessary for our purpose to quote but parts of this record. The first of these is as follows: "On April 6, 1893, the senate and house of representatives, in joint convention assembled, adopted the following motion: 'That this convention adopt and present to the supreme court the articles of impeachment prepared against George H. Hastings, attorney general, a member of the board of public lands and buildings; also those presented against John C. Allen, secretary of state; Augustus R.

Humphrey, commissioner of public lands and buildings, and John E. Hill, ex-treasurer of state.' * * * The following motion was adopted: 'I move that a committee of three members of the joint convention, one from each of the political parties represented in the legislature, to be chosen by their respective parties, be selected to employ attorneys to prosecute the cases of impeachment against the various officers and ex-state officers.' Subsequently, and in accordance with the above motion, Mr. Howe, on the part of the republicans, presented the name of George R. Colton; Mr. Darner, on behalf of the independents, presented the name of P. H. Barry; and Mr. North, on the part of the democrats, presented the name of C. D. Casper. And on motion the parties last above named were made the choice of the joint convention. On motion, the committee appointed by the joint convention to prosecute the several impeachment cases were empowered to employ attorneys and to send for persons and papers."

The proceedings in joint convention under date of April 7, 1893, were recorded in the following language: "The following resolution was adopted: 'That the committee appointed by this joint convention to manage the impeachment proceedings shall be granted each the sum of $2.50 per diem and expenses, and shall be authorized to audit all accounts drawn against the funds appropriated for the impeachment proceedings.'"

In the joint appropriation act (chapter 55, Laws of 1893) there was an appropriation of $15,000, or of so much thereof as was necessary, to defray the expenses of the impeachment proceedings. In this appropriation act section 2 provides as follows:

"Sec. 2. The auditor of public accounts is hereby authorized and required, upon the presentation of the proper vouchers, to draw his warrants on the stated funds and against the appropriations as made in section one (1) of this act in favor of the party performing the service, for

Barry v. State.

the amount due, and such warrants shall give the name of the person and the nature of the service."

The matter of difference between the relator and the respondents arose as to the necessity that the claims of the nature of this of the relator should be audited or authenticated by the board of managers as a condition precedent to its being audited by the auditor of public accounts of the state. The theory of the auditor of public accounts is perhaps best stated in his answer to a question which appears in the record. The question and answer were as follows:

Q. Would you in any case—would you audit and allow any claim, or issue a warrant therefor, against that appropriation for the expense of the impeachment proceedings unless a voucher was previously presented to you and approved by the board of managers?

A. No, sir; not with my present information. If the court would direct me to do it, I do not know what course I might pursue.

Article 3 of chapter 83 of the Compiled Statutes defines the duty of the auditor of public accounts. By the second section the auditor is declared to be the general accountant of the state, etc. In the fourth section one of his duties is defined as follows: "First, to audit, adjust and settle all claims for services rendered, or expenditures made, for the benefit of the state, provided such services are rendered, or expenditures made, by authority of law, except only such claims as may be expressly required by law to be audited and settled by other officers or persons." In section 6, article 3, just referred to, it is provided that "all persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the auditor to be audited, settled, and allowed, within two years after such claims shall accrue." Section 7 is as follows:

"Sec. 7. The auditor, whenever he may think it necessary to the proper settlement of any account, may examine

the parties, witnesses, or others on oath or affirmation touching any matter material to be known in the settlement of such account."

. It has already been shown, by a quotation from section 2 of the general appropriation act for 1893, that the auditor of public accounts was authorized and required, upon the presentation of proper vouchers, to draw his warrant on the stated funds and as against the appropriations made in section 1 of that act, in favor of the parties performing the services, for the amount due. This provision is entirely harmonious with the provisions of the general statutes which have already been quoted. The board of managers was created and its duties defined simply by a joint resolution, which possessed none of the dignity of a statute, and could not operate to abrogate or modify statutory provisions in existence. The provision of this joint resolution, that the board of managers should be authorized to audit all accounts against the funds appropriated for the impeachment proceedings, did not operate to relieve the auditor of that duty; neither did it relieve him of any responsibility attached to the duties of his office by statutory provisions. The joint resolution was simply an instruction to a standing committee, and that committee, by auditing the "claim," as it is called, could do no more than furnish evidence which would justify the auditor of public accounts in his duty as to auditing and allowing the claims presented. In case the auditor of public accounts was in doubt as to whether the claim should be allowed or not, he might, under the general provisions of the statute, examine the members of the board of managers on oath or affirmation touching any matter material to be known to a settlement of such account. Section 645 of the Code of Civil Procedure provides that a " writ of *mandamus* may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust,

or station." The board of managers were not by law specially enjoined or required to audit claims; neither did that duty result from an office, trust, or station held by the board or its members. It is very probable that the evidence afforded by the approval of claims arising out of the impeachment proceedings by this board might be satisfactory evidence whereon the auditor of public accounts could act with confidence, but the approval of this board was not indispensable. In this respect it differs from the case of *State v. Moore*, 37 Neb., 507. In the case last referred to this court held that the original vouchers should in all cases be sent to the auditor, and that Commissioner Garneau, the relator, should approve the same before sending them. It was said in the opinion: "The auditor will then have the evidence of the debt before him and will know whether it is such a claim as the legislature has provided an appropriation for. If it is, it is his duty to draw a warrant. If it is not, then he should refuse." The claims which were under consideration in that case were those of Commissioner General Garneau, and were for the reimbursement to him of moneys paid out by him in the discharge of his duties as commissioner general. This requirement in the opinion was only that the voucher, when presented by the commissioner general, should show the nature of the account presented, and that he had approved the same. That case is authority only for the requirement by the auditor of public accounts, in the matter under consideration, that the relator should, to qualify his claim for allowance, furnish proof of its correctness. In the Garneau case there was no requirement that any board or person other than himself should certify to his claims as a condition precedent to their presentment and allowance. We are of the opinion, even conceding all the facts found by the district court to have been established by the evidence, that nevertheless, there never existed any power or warrant for the allowance of the writ of *mandamus* against the re-

spondents.   For this reason the order was erroneous, and is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.