THE STATE OF NEBRASKA, EX REL. RICHARD JAMES,
v. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

1. **Constitutional Law:** CLAIMS AGAINST STATE. The con-
stitution of the state requires that all claims upon the state
treasury must be examined and adjusted by the auditor, and
his action approved by the secretary of state before any warrant
can be drawn therefor. This provision applies to all claims,
whether claimed by virtue of a specific appropriation or not.

2.  ————: LEGISLATIVE APPROPRIATIONS.  The making of a specific appropriation by the legislature for the purpose of paying a demand against the state is, in no sense, the auditing of such claim, and the duties and responsibilities of the auditor and secretary of state with reference to the payment thereof are not diminished thereby.

3.  ————: ————.  The legislature has no authority under the constitution to audit or adjust a claim against the state, and if money is appropriated to pay an illegal claim or one which the state does not owe, and the auditor so finds upon examination and adjustment it is his duty to refuse to issue a warrant, notwithstanding such appropriation.

4.  ————: ————: APPEAL FROM DECISION OF AUDITOR.  The law furnishes an adequate remedy, by appeal from the decision of the auditor in the examination and adjustment of claims against the state.  Therefore a mandamus will not issue to compel him to issue a warrant for the payment of a claim which has been disallowed by him upon such examination and adjustment.

ORIGINAL application for mandamus.

*Richard F. James, pro se.*

*William Leese, Attorney General,* for respondent.

REESE, J.

This is an application to this court, in the exercise of its original jurisdiction, for a writ of mandamus to compel the auditor of public accounts to audit a claim in favor of the relator, and issue his warrant upon the treasury therefor.  The respondent demurred to the petition upon the ground that it did not state facts sufficient to constitute a cause of action.

In order that the exact point presented may be fully stated, we copy the petition, which is as follows:

"Your relator, Richard F. James, complaining of the respondent, says:  That respondent is the duly qualified and acting auditor of public accounts of the state of Nebraska.

"That your relator having certain claims against the state of Nebraska for services performed by him, aggregating the amount as itemized by him in the sum of $1,612.-63, presented said claim to the then auditor of public accounts on or about the ...... day of ........., 1882.

"That the then auditor of public accounts refused to pay said claims, because there had been no appropriation made by the legislature therefor.

"That thereupon at the next ensuing session of the legislature of the state of Nebraska, to-wit, its session held in the year 1883, said relator presented the aforesaid claims to the legislature, with others.

"That said claims were considered .by the committee on claims of said legislature, and upon a report by said committee, said legislature passed its certain act entitled, ' An act for the relief of Richard F. James, Diantha Latham, assignee, and.others.'

"That said act was duly approved February 24, 1883.

"That the first section of said act recited as follows:

"' SECTION 1. That the sum of six thousand eight hundred and twenty-four dollars and fourteen cents ($6,824.-14) be and the same is hereby appropriated out of any moneys belonging to the state general fund not otherwise appropriated to pay outstanding indebtedness in the cases wherein the state of Nebraska prosecuted I. P. Olive and others for murder  *  *  *  *  *  *  *   itemized as follows:

" Richard F. James.......................................$1323.68
" Diantha Latham, assignee......................... 697.80'

"That thereupon, on the 26th day of May, 1883, the then auditor of public accounts, upon presentation of voucher, drew his warrant on the treasury in favor of Diantha Latham, assignee of Richard F. James, for the sum of $697.30, appropriated as aforesaid to Diantha Latham.

"That thereafter, to-wit: On the 5th day of June, 1883,

there was presented to the then auditor of public accounts
a voucher in words and figures following:

THE STATE OF NEBRASKA,

To RICHARD F. JAMES, Dr.

For amount appropriated by the 13th session of legisla-
ture as per act approved February 24th, 1883, being for
expenses, etc., incurred, wherein the state prosecuted I. P.
Olive and others, as per vouchers hereto attached:

| | |
|---|---:|
| Board, etc................................................ | $   388.00 |
| "      ............................................... | 27.40 |
| Guard, etc............................................... | 597.98 |
| Miscellaneous........................................... | 399.30 |
| Services ................................................ | 200.00 |
| | $1,612.68 |

"And that itemized accounts were attached to the said
voucher, each for the sum named in said voucher, aggre-
gating the sum of $1,612.68.

"That the first two itemized accounts attached to said
voucher for the sums of $388.00 and $27.40 are duplicates
of accounts assigned to Diantha Latham by said Richard
F. James, and were paid said Latham as a part of his said
assigned claim of $697.80.

"That the then auditor of public accounts, after deducting
$415.40, the amount before assigned and paid to Diantha
Latham, and the further sum of $46.90, errors in footing
said accounts, then drew his warrant on the general fund
for the sum of $1,162.88 as balance found due by the then
auditor of public accounts.

"That thereafter, to-wit: On or about the ...... day of
........., 1887, said relator presented a certain voucher to
the respondent, which is hereto attached and made a part
of this petition, and requested him to audit said claim in
the amount of $160.80, and draw his warrant on the treas-
ury for said balance due him.

"That said respondent refused, and still refuses so to do.

"That the money so appropriated is now in the treasury unexpended.    Wherefore the relator prays a writ of mandamus," etc.

It thus appears that of the claim of $1,612.68, originally presented to the auditor, there has been paid to Latham $415.40, and that there was an error of $46.90 in the footing—or addition—of the items; making a total of $462.30 deducted by the auditor when he issued his warrant for $1,162.88.    These latter items added together make a total of $1,625.18, or $12.88 more than the original claim.    But, by the act of the legislature referred to, the sum of $1,323-.68 was appropriated to the relator, and he has only drawn the $1,162.88, which would leave due him the amount claimed, if the auditor is required to issue his warrant for the whole amount of the appropriation without any reference to the actual indebtedness.

The question presented is: Has the auditor the authority to investigate the original claim, ascertain the amount actually due, and issue his warrant therefor; or, is it his duty to issue the warrant for the amount appropriated, upon the theory that the claim has been "audited" by the legislature?

It is contended by the relator that the $1,323.68 is specifically appropriated to him by the legislature, and that the duties of the auditor in issuing the warrant are ministerial only, and it is his duty to carry out the will of the law-making power as expressed in the act making the appropriation.    This view of the case is supported by a number of cases cited in relator's brief, and were it not that, in our view, the constitution and law of this state have provided differently, we should consider them entitled to great weight in the decision of the question before us.

It is insisted by the attorney general that it is the duty of the auditor to "audit" all claims presented to him against the state, and the fact that a specific appropriation has been made to meet the demand cannot change his duty

or deprive him of his authority to investigate and pass upon the merits of the original claim. And he insists that this view is sustained by the language of the act by which the appropriation is made.

The act in question is found at page 370 of the Session Laws of 1883, and is as follows:

"*Be it enacted by the Legislature of the State of Nebraska:*

"Section 1. That the sum of six thousand eight hundred and twenty-four dollars and fourteen cents ($6,824.14), be and the same is hereby appropriated out of any moneys belonging to the state general fund, not otherwise appropriated, to pay outstanding indebtedness in the cases wherein the state of Nebraska prosecuted I. P. Olive and others for murder, and William Lee with assault to murder, and Tip Laruc, John Kinney, Henry Horgraves for the crime of murder, which said crimes were committed in the unorganized territory of the state of Nebraska, and attached to the fifth judicial district for judicial purposes, itemized as follows:

Richard F. James ....................................$1,323.68
Diantha Latham, assignee ................:..........   697.80
          *      *      *      *      *      *      *

" SEC. 2. The auditor is hereby authorized to draw his warrants for the several amounts due to the parties named in this act."

By the first section the whole amount required is appropriated to pay "outstanding indebtedness," growing out of the prosecutions named, and by the second section the auditor is "authorized and directed to draw his warrant for the several amounts *due* to the parties named" in the act. This language would seem to indicate that it was the purpose of the legislature that this "outstanding indebtedness" should be paid to the parties holding the claims upon the ascertainment by the auditor of the amounts due to each of the parties named, but of course not in excess of the sum appropriated or set apart for the payment of each. We

think the only legal effect of the act is to give to the auditor the authority, which he did not before have, of issuing his warrant for the amount *due* to the parties for whose benefit the act was passed.

But we do not base our decision of the question alone upon the language of the act referred to. In fact, were the language otherwise our holding would be the same.

Section 9 of the article (IX.) of our state constitution, on " Revenue and Finance," provides that, " the legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state before any warrant for the amount allowed shall be drawn ; *Provided,* That a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court."

This language clearly implies a limitation upon the power of the legislature in the matter of auditing claims against the state. The provision is imperative. The legislature *shall* provide that *all* claims upon the treasury " shall be examined and adjusted by the auditor and approved by the secretary of state" before any warrant shall be drawn or the money paid. These officers are, by the fundamental law of the state, made the examining board through whose hands all claims must pass, and it is not within the power of the legislature to change this tribunal. It cannot review the decision of these officers, for the section clearly points out the reviewing court. The party aggrieved may appeal to the district court. The fact that the appropriation is specific can have no weight whatever, for section 22 of article 3 of the constitution provides that, " no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law," etc. All appropriations of money from the treasury are specific, and " *all* claims upon the treasury *shall* be examined and adjusted by the auditor," etc. There is no distinction in appropriations. It is true that in the section

(22, Art. III.) above referred to, it is provided that, "no allowance shall be made for the incidental expenses of any state officer except the same be made by general appropriation," etc., but this provision can in no way change the fact that each appropriation contained in the *general* appropriation bill must be a specific appropriation for the purposes or offices named ; and even then an account must be rendered " *specifying each item.*" Nothing could be more specific than such an appropriation. No warrant can be drawn except in pursuance of an appropriation, but the auditor may examine and adjust claims in the absence of such action by the legislature. While it is the duty of the legislature to see that no appropriations are made except for meritorious claims, yet such is the character of the safeguards thrown around the state treasury that such appropriation is by no means a final adjustment or auditing of the claim. It simply places so much of the funds in a position to be used by the auditor and secretary when the claim is examined and adjusted by the auditor, and his action is approved by the secretary. While the legislature may set apart money to pay a claim, it cannot pay it out nor order it to be done except in the manner provided by law. It has no jurisdiction to audit claims, and it is powerless to apply the money thereon without the *quasi* judicial concurrence of the officers named. If money is appropriated by that body to pay a claim, such action is not an adjudication upon its validity to such an extent as to relieve the auditor and secretary from responsibility, for their duties remain as fixed by the constitution. This construction of the constitution has been adopted by the legislature as well as by the supreme court in its former decisions.

Sections 1, 2, 3, and 4 of article VIII. of chapter 83, Compiled Statutes, are as follows :

" SECTION 1. All claims of whatever nature upon the treasury of this state, before any warrant shall be drawn

for the payment of the same, shall be examined and adjusted by the auditor of public accounts and approved by the secretary of state; *Provided, however,* That no warrant shall be drawn for any claim until an appropriation shall have been made therefor.

"Sec. 2. The auditor of public accounts shall keep a record of all claims presented to him for examination and adjustment, and shall thereon note the amount of such claim as shall be allowed or disallowed, and in case of the disallowance of all such claims, or any part thereof, the party aggrieved by the decision of the auditor and secretary of state may appeal therefrom to the district court of the county where the capital is located, within twenty days after receiving official notice. Such appeal may be taken in the manner provided by law in relation to appeals from county courts to such district courts, and shall be prosecuted to effect as in such cases; *Provided, however,* That the party taking such appeal shall give bond to the state of Nebraska in the sum of two hundred dollars, with sufficient surety, to be approved by the clerk of the court to which such appeal may be taken, conditioned to pay all costs which may accrue to the auditor of public accounts by reason of taking such appeal. No other bond shall be required.

"Sec. 3. In case the appeal shall be taken as provided in section two of this act, and on trial thereof, the district court shall be of the opinion that the decision of said officers was wrong, either in fact or law, the said court shall reverse the same, and by its order and mandate require the said auditor to issue a warrant, in accordance with the provisions of section one of this act, upon the treasury for such an amount as shall be determined on the trial of such appeal to be legally due thereon. If either party feel aggrieved by the said judgment the same may be reviewed in the supreme court as in other cases.

Sec. 4. No claim which has been once presented to such auditor and secretary of state and has been disallowed,

in whole or in part, shall ever again be presented to such officers, or in any manner acted upon by them, but shall be forever barred, unless an appeal shall have been taken, as provided in section two of this act."

These provisions were enacted in 1877 (See Session Laws 1877, 202), after the taking effect of our present constitution, and were evidently adopted for the purpose of conforming to its provisions.

In *State, ex rel. Squires, v. Wallichs*, 14 Neb., 439, the present chief justice, writing the opinion of the court, in construing the section of the constitution above referred to, says: " Section 9, Art. IX., requires the legislature to provide that *all* claims upon the treasury shall be examined and *adjusted* by the auditor and approved by the secretary of state.   *    *    *    *    Now suppose the legislature made an appropriation for the payment of articles to be donated to the members in addition to the compensation provided for in the constitution, could the auditor be compelled to draw his warrant for the articles so donated ?   That he could not will be readily seen, because by the act of drawing his warrant he in effect certified that the claim is authorized by law.   The law imposes upon him the duty of examining claims and makes him responsible for warrants improperly drawn," etc.

We therefore hold that the auditor not only has the authority to examine and adjust all claims against the state, but that it is his duty to do so, when they are presented, and that if he finds the claim illegal or unjust, or that it has been paid, he should refuse to issue his warrant, and this obligation and his responsibility for his acts cannot be removed by the legislature.   Also that the specific appropriation of money to pay a claim is in no sense the auditing of such demand within the provisions of the constitution.

As appears from the statute above quoted the right of appeal is given to a claimant whose claim has been disal-

lowed in whole or in part by the auditor. This right furnishes to such claimant a plain and adequate remedy in the due course of the law. By the statute a claimant whose claim has been disallowed, in whole or in part, is placed in the attitude of any other litigant against whom an adverse judgment has been rendered. He must appeal or the adjudication will be effectual. Section 646 of the civil code, referring to proceedings upon mandamus, is as follows:

"This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law," etc. There being a plain and adequate remedy in this case, provided by law, it follows that a writ of mandamus cannot issue.

WRIT DENIED.

THE other judges concur.