State of Nebraska, ex rel. Edward W. Sayre, v. Eugene Moore, Auditor of Public Accounts.

Filed June 5, 1894. No. 6470.

1. **Attorneys' Liens:** Legislative Appropriations. An attorney's lien for services rendered his client cannot be successfully asserted against money appropriated to such client by an act of the legislature while such money is in the custody or under the control of the state treasurer.

2. **Constitutional Law:** Legislative Appropriation for Expenses of County: Mandamus to Auditor. The legislature, by an act duly passed and approved April 5, 1893, appropriated "the sum of $7,495.73 for the relief of Scott's Bluff county, and to reimburse said county for expenses incurred in the trial of one George S. Arnold upon the charge of murder." In a *mandamus* proceeding in this court to compel the auditor to draw his warrant in favor of the treasurer of Scott's Bluff county for the amount appropriated, *held*, (1) that the act was not in conflict with either the letter or spirit of the constitution; (2) that the appropriation of this money was in the nature of a donation, and that no inquiry or objection is admissible on the part of the auditor as to whether the appropriation was just, whether it was bestowed upon an undeserving recipient, or what motives influenced the legislature to make it; (3) that the only duty left for the auditor in the premises was a ministerial one, and that he had no authority to supervise the action of the legislature by an inquiry into the actual expenditures of the county in the prosecution of Arnold. *State v. Babcock,* 22 Neb., 38, distinguished.

Original application for *mandamus.*

*M. J. Huffman* and *Field & Holmes,* for relator.

*George H. Hastings, Attorney General, contra.*

No briefs filed.

Ragan, C.

The legislature of 1893 passed an act (House Roll No. 278) in words and figures as follows:

"An act for the relief of Scott's Bluff county, Nebraska,
    and to appropriate $7,495.73 to said county.

"*Be it enacted by the Legislature of the State of Nebraska:*

"Section 1. That there is hereby appropriated out of any
funds in the state treasury, and not otherwise appropriated,
the sum of $7,495.73, for the relief of Scott's Bluff county,
and to reimburse said county for expenses incurred in the
trial of one George S. Arnold upon the charge of murder,
at the adjourned July term, 1889, of the district court
within and for said county; and the auditor is hereby au-
thorized to draw his warrant upon the state treasurer for
the above amount in favor of said Scott's Bluff county."

On August 5, 1893, the treasurer of Scott's Bluff county
duly demanded of the auditor of public accounts that he
draw his warrant upon the state treasurer, payable to the
treasurer of said Scott's Bluff county, for the amount so
appropriated by the legislature. The auditor declined to
comply with this request, and thereupon the treasurer of
Scott's Bluff county, as relator, filed in this court an ap-
plication for a peremptory *mandamus* commanding the
auditor to draw such warrant. The auditor answered the
application and alleges the following as reasons for declin-
ing to draw his warrant:

"And this respondent further says that under the pro-
visions of the constitution and laws of the state of Ne-
braska, the auditor of public accounts has authority to
examine and adjust all claims against the state when pre-
sented to him, and to refuse to pay the same, when, in his
opinion, the same are illegal or unjust. And this repond-
ent alleges that he found said claim for said Scott's Bluff
county unjust and illegal; that the act making the appro-
priation is contrary to the letter and spirit of the constitu-
tion of the state of Nebraska; that the said county of
Scott's Bluff was put to some expense by reason of said
trial, but the amount thereof this respondent alleges, upon
information and belief, was a much less sum, than the

sum alleged to have been appropriated by the legislature.
*   *   *   This respondent further alleges that heretofore,
to-wit, on the 20th day of June, 1893, one Nellie M. Rich-
ardson   *   *   *   served upon this respondent   *   *   *
a notice of an attorney's lien upon said sum   *   *   *
appropriated by the legislature of the state of Nebraska for
the use and benefit of said Scott's Bluff county, which said
notice is in words and figures following:

### " 'NOTICE.

" ' *To Eugene Moore, Auditor Public Accounts of the
State of Nebraska:* You will take notice that I, Nellie M.
Richardson, do claim an attorney's lien upon the funds
appropriated by the legislature of the state of Nebraska to
reimburse Scott's Bluff county for expenses incurred in the
trial of George S. Arnold, in the sum of $1,500.

" 'NELLIE M. RICHARDSON.' "

To this answer the relator demurs.

We will first dispose of the question of the attorney's lien
attempted to be filed against this appropriation.   Section 8,
chapter 7, page 90, Compiled Statutes of Nebraska, provides :
"An attorney has a lien for a general balance of compensa-
tion upon any papers of his client which have come into his
possession in the course of his professional employment;
upon money in his hands belonging to his client, and in
the hands of the adverse party in an action or proceeding
in which the attorney was employed, from the time of giv-
ing notice of the lien to that party."   Now, this money is
not in Richardson's hands.   It is in the hands of the treas-
urer of the state of Nebraska, and neither the state nor its
treasurer are, or have been, adverse parties to any action or
proceeding brought or had by Scott's Bluff county, for
whom it appears Richardson is attorney.   Richardson then
has not brought herself within this statute, and that is one
reason, at least, why she can have no lien on this money;
but if Richardson has rendered services for Scott's Bluff

county, she can file her claim against the county, with the
county clerk thereof, and have the county authorities of
that county pass upon its merits.    This court cannot audit
her claim against Scott's Bluff county.    The law has pro-
vided ample remedies and methods of procedure for all
persons having claims against a county, and these remedies
must be pursued.    An attorney will not be permitted to
use this court in a *mandamus* proceeding for the purpose of
having the merits or amount of his claim against a county
adjudicated.    It may well be doubted if in any case an
attorney's or other lien can be successfully asserted against
money appropriated by the legislature to any person or cor-
poration, public or private, while in the hands of, or under
the control of, an officer of the state.    It would be contrary
to good public policy and detrimental to the due adminis-
tration of the affairs of the state to permit its officers to be
harassed and hindered in the discharge of their duties by
parties asserting rights, either by way of attorney's liens,
attachments, or garnishment proceedings, or otherwise, to
funds in the hands of, or under the control of, such officers.
The claim of Richardson filed with the auditor is not a lien
on the money appropriated by the legislature to Scott's
Bluff county, and the auditor may disregard such lien with
impunity.

The next reason assigned by the auditor for not drawing
the warrant to pay the appropriation is "that the act mak-
ing the appropriation is contrary to the letter and spirit of
the constitution of the state of Nebraska."    We quote
Cooley, Constitutional Limitations (4th ed., p. 210), as
follows: "When a law of congress is assailed as void, we
look into the national constitution to see if the grant of
specified powers is broad enough to embrace it; but when a
state law is attacked on the same ground, it is presumably
valid in any case; and this presumption is a conclusive one,
unless in the constitution of the United States, or of the state,
we are unable to discover that it is prohibited.    We look

in the constitution of the United States for *grants* of leg-
islative power, but in the constitution of the state to as-
certain if any *limitations* have been imposed upon the com-
plete powers with which the legislative department of the
state is vested in its creation. Congress can pass no laws
but such as the constitution authorizes either expressly or
by clear implication, while the state legislature has juris-
diction of all subjects on which its legislation is not pro-
hibited. The law-making power of the state recognizes no
restraints, and is bound by none, except such as are im-
posed by the constitution. That instrument has been aptly
termed a legislative act by the people themselves in their
sovereign capacity, and is, therefore, the paramount law.
Its object is not to grant legislative power, but to confine
and restrain it. Without the constitutional limitations, the
power to make laws would be absolute." Tested by the
rule quoted from this eminent jurist, there is nothing in
the constitution of Nebraska that prohibits the legislature
of the state, representing, as it does, the sovereignty of the
people, from appropriating money to reimburse a county
for expenses incurred by it in the prosecution of criminals.
True, there is no legal obligation resting on the state to
pay such expenses, but the power of the legislature to ap-
propriate money is not limited by the legal obligations of
the state. We quote again from Cooley, Constitutional
Limitations (p. 599), as follows: "It must always be con-
ceded that the proper authority to determine what should,
and what should not, constitute a public burden is the
legislative department of the state.   *   *   *   And in de-
termining this question the legislature cannot be held to any
narrow or technical rule. Not only are certain expenditures
absolutely essential to the continued existence of a govern-
ment,   *   *   *   but, as a matter of policy, it may some-
times be proper and wise to assume other burdens which
rest entirely on considerations of honor, gratitude, or
charity.   *   *   *   There will, therefore, be necessary

expenditures, and expenditures which rest upon considerations of policy only, and in regard to the one as much as to the other, the decision of that department, to which alone questions of state policy are addressed, must be accepted as conclusive." This appropriation may be unjust. In making it the legislature may have acted unwisely; but of these things the legislature itself is sole judge. The courts cannot inquire into either the motive or justness of the law. Their only concern is with its legality.

Finally, the auditor alleges, as a reason for his refusal to draw this warrant, that by the constitution and laws of this state he has authority to examine and adjust all claims against the state, and that while Scott's Bluff county was put to some expense in the prosecution of Arnold for murder, the amount of such expense, he, the auditor, is informed and believes, is much less than the sum appropriated by the legislature. In other words, the auditor's contention here is that, notwithstanding the legislature appropriated a specifically named sum of money for the relief of Scott's Bluff county, and to reimburse it for the expense incurred by it in the prosecution of Arnold, yet he, the auditor, is invested by the constitution and laws with the discretion to examine into and ascertain the exact amount of money expended by the county in the criminal prosecution, and then draw his warrant for such sum only as he ascertains the county expended. If by the express words of the act, or if by any reasonable construction thereof, it appeared that the legislature intended to appropriate $7,495.73, or so much thereof as might be necessary to reimburse the county, then doubtless the auditor's position would be tenable; but no such words of limitation of the amount appropriated are in the act, nor can they be read into it by any fair or reasonable construction. What was the intention of the legislature in the premises? Doubtless to fully reimburse Scott's Bluff county for the expense incurred by it in prosecuting Arnold for murder.

State v. Moore.

The appropriation of this money—a gift in fact—was within the power of the legislature, and no inquiry or objection is admissible on the part of the auditor as to whether the appropriation was just, whether it was bestowed upon an undeserving recipient, or what motives influenced the legislature to make it; nor can the auditor be heard to say that the gift was too large; that the appropriation carried more money than was required to reimburse the county for what it had expended. The only duty left for the auditor in the premises is a merely ministerial one. He has no authority to supervise the action of the legislature by an inquiry into the actual expenditures of Scott's Bluff county in the prosecution of Arnold.

Section 9, article 9, of the constitution provides: "The legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor, and approved by the secretary of state, before any warrant for the amount allowed shall be drawn; *Provided*, That a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court." Now, what is meant in this constitutional provision by "claims upon the treasury" which the auditor must examine and adjust? We take it that it means claims which the state is or may be under legal obligation to pay, such as the salaries of its officers and employes, the costs of erecting buildings, and the expense attendant upon the maintenance of its prisons, asylums, schools, and other institutions. We do not think the appropriation of the specific sum by the legislature to a particularly named person as a donation, gift, or a reward, and for which the state was under no legal obligation, comes within the claims which the auditor must examine and adjust. True, "he is placed in his position as agent of the state to protect the treasury against demands not lawfully due and payable by the state; and when a claim is presented, he must ascertain whether or not there is authority of law for its pay-

State v. Moore.

ment, and if he finds such authority, that should sat-
isfy him.  If the legislature has by express enactment
directed that a certain sum shall be paid to a person, and
appropriated the money for such payment, the auditor's
duty in the premises becomes then merely ministerial.  The
power conferred upon him is not to supervise the action of
the state when by its legislature it has admitted and ac-
knowledged the claim and ordered it to be paid.   Where
the claim is not admitted by the state, he then stands in
behalf of the state, and as its agent it is his duty to deter-
mine whether or not it is admissible, and justly and legally
due; but when his principal, the state, whose officer he is,
acknowledges the claim and directs it to be paid, then, in-
asmuch as the state's regulation for the payment of money
requires him to draw warrants upon the treasury before
such money can be paid, his duty is, without questioning,
to conform to such direction.  Finding the law for its
payment to exist, he must regard that as plenary evidence
that it is justly due.  He cannot properly question the
authority of an act of legislation directing the payment
of money by the state, or disregard its authority, how-
ever fully he may be convinced that the money is be-
stowed upon an undeserving recipient." (*Angle v. Runyon*,
38 N. J. Law, 403.)  Whenever the money necessary to
pay a particular claim against a state has been appropri-
ated by the legislature, and the amount of the claim has
been definitely ascertained in a manner prescribed by law,
a refusal by the auditor of said state to draw his warrant
upon the treasurer of the state for the payment of the
claim will authorize the interposition of the courts by ap-
propriate mandatory proceedings. (High, Extraordinary
Legal Remedies [2d ed.], sec. 101.)  True, the constitution
makes it the duty of the auditor to adjust claims.  "Adjust"
means "to settle or bring to a satisfactory state, so that
parties are agreed in the result; as, to adjust accounts."
(Webster's Dictionary.)

We are aware that it was said in *State v. Babcock*, 22 Neb., 38, that the constitutional provision requiring claims upon the state treasurer to be examined and adjusted by the auditor applied to all claims whether by virtue of a specific appropriation or not, and that the making of a specific appropriation by the legislature for the purpose of paying a demand against the state was in no sense the auditing of such claim; but that case should be distinguished from the one here. The appropriation considered in *State v. Babcock, supra,* was for paying the expenses (incurred by the state) in the prosecution of certain persons for crimes committed in an unorganized territory of the state. By the second section of that appropriation act it was provided: "And the auditor is hereby authorized to draw his warrants for the several amounts due to the parties named in this act;" and the court said: "This language would seem to indicate that it was the purpose of the legislature that this 'outstanding indebtedness' should be paid to the parties holding the claims, upon the ascertainment by the auditor of the amounts due to each of the parties named, but of course not in excess of the sum appropriated." It is also stated in *State v. Babcock, supra:* "The legislature has no authority under the constitution to audit or adjust a claim against the state, and if money is appropriated to pay an illegal claim, or one which the state does not owe, and the auditor so finds upon examination and adjustment, it is his duty to refuse to issue a warrant, notwithstanding such appropriation;" but this point was not necessary to a decision of the case there decided, and the rule there announced should be restricted to such claims and demands as the state is under a legal obligation to pay, and not extended to appropriations of specific sums of money made by the legislature as a donation, gift, reward, or charity.

Suppose the governor should offer a reward of $1,000 for the arrest and return to the state of a fugitive from jus-

tice, and A should arrest and return the fugitive; and the legislature should, after inquiring and ascertaining that A had earned the reward, appropriate $1,000 to him for having arrested and returned the fugitive. Could the auditor inquire into the value of the time and outlay of A in arresting and returning the fugitive, and refuse to draw a warrant for only the value of A's time and expenses? In such a case, would there be any adjustment to be made by the auditor of A's claim? Would the auditor have any duty to perform in the premises but a mere ministerial one? Would he have any discretion in the premises? The legislature of 1893 (House Roll No. 85) appropriated the sum of $2,000 for the payment of damages sustained by one Maurer while engaged in the public service as a private in the Nebraska National Guards. It was recited in the act that Maurer was exposed to the cold and freezing weather, and by reason thereof he contracted rheumatism, which became chronic, and from which he suffered great physical pain and became incapacitated for work, and was prevented from following his vocation and earning a living, and that he was required to pay out large sums of money for medical care and attendance for a period of more than two years. When Maurer presents his claim to the auditor, can the latter institute proceedings to ascertain the value of the time lost by Maurer by reason of his rheumatism and sickness; the expenses paid by him for physicians, nurses, etc.? Can he call experts to testify as to whether Maurer's injury is permanent, and if so, his expectancy of life and the present worth of what he probably would have earned had he not been injured? This legislative gift, or donation, to Maurer contains an allowance for physical suffering. Can the auditor say that too much was allowed for such suffering, and reduce the appropriation accordingly? We think not; and yet he may do all these things in Maurer's case, if his contention here is correct, viz., that his duty as auditor requires him to ascertain the amount of

actual expenses incurred by Scott's Bluff county in the
prosecution of Arnold, and then draw his warrant for that
sum only.   Such cannot be the law.   If it is, then instead
of a government of three co-ordinate departments, the leg-
islative is subordinate to the executive department.   The
auditor is an able and conscientious officer and deserving
of the highest commendation for the jealous care with
which he guards the public treasury, and he acts wisely in
shielding himself from liability by the decisions of the
courts in cases where he is in doubt; but in the case at bar
he may not only legally draw the warrant demanded by
the relator, but it is his duty to do so.   He has no discre-
tion in the premises.   The demurrer to the return is sus-
tained, and the writ will issue as prayed.

WRIT ALLOWED.

NORVAL, C. J., dissenting.

Upon the question of the constitutionality of the act of
the legislature under consideration, I express no opinion.
While I concur in the views expressed by RAGAN, C., re-
lating to the claim of Nellie M. Richardson for an attor-
ney's lien, I am unable to agree to the proposition that the
duty of the auditor in the premises is merely ministerial,
and that he has no authority to examine into and deter-
mine the actual sums expended by the county in the prose-
cution of Arnold.   I deem it proper to state the reasons
for my dissent.

It is conceded by the majority opinion that *mandamus*
would not lie "if by the express words of the act, or if by
any reasonable construction thereof, it appeared that the
legislature intended to appropriate $7,495.73, or so much
thereof as might be necessary to reimburse the county;"
and there can be no doubt of the soundness of the propo-
sition stated.   What, then, is the proper interpretation to
be placed upon the statute under review?   In the body of

the act it is provided: "There is hereby appropriated out
of any funds in the state treasury, and not otherwise ap-
propriated, the sum of $7,495.73, for the relief of Scott's
Bluff county, and to *reimburse* said county for expenses
incurred in the trial of one George S. Arnold upon the
charge of murder,   *   *   *   and the auditor is hereby
authorized to draw his warrant upon the state treasurer for
the above amount in favor of said Scott's Bluff county."
It is argued that the legislature by this act appropriated a
definite and specific amount to be paid the county; that the
approval of this claim required of the auditor is merely
formal; and that he can exercise no discretion whatever.
The statute defining the duties of the auditor, as well as
the constitution, requires that officer to examine and audit
all appropriations, and it has been the universal practice in
the auditor's office, since the adoption of the present state
constitution, to do so, and that too in cases of appropria-
tions as specific as is the one before us.   This custom must
have been known to the framers of this act at the time it
was adopted, and it is fair to presume that the law-makers
intended that the claim of the county, which this appro-
priation was intended to pay, should be audited as had
been the custom theretofore.   The object of the legislature
in passing the act was to reimburse, or make whole, the
county for all the legitimate expenses incurred by it in
the prosecution and trial of Arnold, and nothing further.
The statute regulates the costs in a criminal prosecution
for a felony, and when the offense is committed in an or-
ganized county the law requires that the county where the
trial is had shall pay the costs and expenses thereof.   The
legislature, by this act, undertook to relieve Scott's Bluff
county of this burden.   The appropriation reads "for the
relief of Scott's Bluff county and to reimburse said county
for expenses incurred," etc.   What was meant by the use
of the word "reimburse"?   Webster defines it thus: "To
replace in a treasury or purse, as an equivalent for what has

59

been taken, lost, or expended ; to refund ; to pay back; to restore; as, to reimburse the expenses of a war." In construing statutes, words should be given their ordinary meaning, and so interpreting the language of this appropriation, it is clear to my mind that the state is only required to refund or pay to the relator the amount of costs and expenses incurred by the county in the trial of Arnold, not exceeding the sum appropriated for that purpose. The auditor was not directed by the act to draw his warrant upon the treasury for $7,495.73, but he was authorized to do so if it required that sum to reimburse the county.

Was it the duty of the auditor, under the constitution and statute, without discretion, to audit this claim? By section 9, article 9, of the state constitution it is provided that "the legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor, and approved by the secretary of the state, before any warrant for the amount allowed shall be drawn; *Provided*, That a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court." In accordance with the requirements of the foregoing constitutional provision, the legislature in 1877 passed a law providing for the examination and adjustment of claims upon the state treasury. (Laws, 1877, p. 202 ; Comp. Stats., ch. 83, art. 8.) I here quote the entire act:

"Section 1. All claims of whatever nature upon the treasury of this state, before any warrant shall be drawn for the payment of the same, shall be examined and adjusted by the auditor of public accounts, and approved by the secretary of state ; *Provided, however*, That no warrant shall be drawn for any claim until an appropriation shall have been made therefor.

"Sec. 2. The auditor of public accounts shall keep a record of all claims presented to him for examination and adjustment, and shall therein note the amount of such claims as shall be allowed or disallowed, and in case of the disal-

lowance of all such claims, or any part thereof, the party aggrieved by the decision of the auditor and secretary of state may appeal therefrom to the district court of the county where the capital is located, within twenty days after receiving official notice. Such appeal may be taken in the manner provided by law in relation to appeals from county courts to such district courts, and shall be prosecuted to effect as in such cases; *Provided, however,* That the party taking such appeal shall give bond to the state of Nebraska in the sum of two hundred dollars, with sufficient surety, to be approved by the clerk of the court to which such appeal may be taken, conditioned to pay all costs which may accrue to the auditor of public accounts by reason of taking such appeal. No other bond shall be required.

"Sec. 3. In case the appeal shall be taken as provided in section 2 of this act, and on trial thereof the district court shall be of the opinion that the decision of said officers was wrong, either in fact or law, the said court shall reverse the same, and by its order and mandate require the said auditor to issue a warrant in accordance with the provisions of section 1 of this act, upon the treasury, for such an amount as shall be determined on the trial of such appeal to be legally due thereon. If either party feel aggrieved by the said judgment, the same may be reviewed in the supreme court as in other cases.

"Sec. 4. No claim which has been once presented to such auditor and secretary of state, and has been disallowed, in whole or in part, shall ever be again presented to such officers, or in any manner acted upon by them, but shall be forever barred, unless an appeal shall have been taken, as provided in section 2 of this act.

"Sec. 5. When a claim has been in part allowed by such officers, a warrant shall be drawn as in other cases where the whole claim shall be allowed."

It will be observed that we have not only a constitu-

tional provision, but an imperative statute, which requires, before any warrant shall be drawn by the auditor upon the state treasury, that the claim must be examined, audited, and allowed by the auditor and approved by the secretary of state; and yet it is here sought to compel by *mandamus* the issuance of a warrant for the full amount named in the appropriation act, when the claim of the county has not as yet been passed upon by the auditor, nor has such claim ever been presented either to him or the secretary of state for approval.   If the duty of the auditor and secretary of state, as regards the auditing of this claim, is ministerial merely, still the performance of such act is a prerequisite to the right of the auditor to draw the warrant.   This is not a proceeding to require the approval of the claim, but to compel the issuance of a warrant without any approval by either of the officers named.   To grant the writ is to disregard the plain requirements of both the constitution and the statute.

It is said the claims upon the treasury which the auditor is required to "examine and adjust," in the sense in which that term is used in the constitution, are "claims which the state is or may be under legal obligations to pay, such as the salaries of its officers and employes, the costs of erecting buildings, and the expense attendant upon the maintenance of its prisons, asylums, schools, and other institutions."   We are unwilling to so limit the word "claims," but conclude it was employed in its broadest sense and embraces every claim against the state for money under an appropriation made by the legislature.   The constitution reads "all claims," and we have no right to inject words into that instrument by judicial interpretation.   That it is the right and duty of the auditor to pass upon and audit the claim under consideration, I entertain no doubt. Section 1 of the act of 1877, above quoted, speaks of "all claims of whatsoever nature."   More comprehensive language could not have been employed to express the legis-

lative will.   The section is too plain to leave any room for-
interpretation.   Even though the construction adopted by
my associates is the correct one, namely, "claims which the
state is or may be under legal obligations to pay" are the
only ones which the auditor is required to examine and
audit, it is the duty of the respondent to pass upon and
determine what amount of this appropriation Scott's Bluff
county is entitled to receive, since the moment the act took
effect, if it is a valid and constitutional law, and the ma-
jority have so found and declared, the claim of the county
for expenses incurred in the prosecution of Arnold becomes
a legal obligation against the state.

It is said the duty of the auditor in the premises is a
ministerial one merely, and that he has no authority to in-
quire into the amount of money actually expended by the
county in the criminal case.   The constitution and the stat-
ute quoted each provide for an appeal to the district court
from the decision of the auditor and secretary of state in
passing upon all claims upon the state treasury.   Sections
6 and 7, article 3, chapter 83, Compiled Statutes, are as
follows :

"Sec. 6.  All persons having claims against the state shall
exhibit the same, with the evidence in support thereof, to
the auditor, to be audited, settled, and allowed within two
years after such claims shall accrue; and in all suits
brought in behalf of the state no debt or claim shall be al-
lowed against the state as a set-off, but such as has been
exhibited to the auditor, and by him allowed or disallowed,
except only in cases where it shall be proved to the satis-
faction of the court that the defendant at the time of trial is
in possession of vouchers which he could not produce to the
auditor, or that he was prevented from exhibiting the claim
to the auditor, by absence from the state, sickness, or un-
avoidable accident; *Provided*, The auditor shall in no case
audit a claim or set-off which is not provided by law.

"Sec. 7.  The auditor, whenever he may think it neces-

sary to the proper settlement of any account, may examine the parties, witnesses, or others, on oath or affirmation, touching any matter material to be known in the settlement of such account."

By said section 6 it is made obligatory upon all persons having claims against the state to exhibit the same, with the evidence in support thereof, to the auditor, to be audited, settled, and allowed within a specified period after the accrual of the claim ; and by the seventh section the auditor is clothed with the power to administer oaths, to take testimony, and examine witnesses and the claimant, if he deems it necessary to the proper adjustment of the claim or account. The duty enjoined upon the auditor is not merely ministerial, but to a great extent he exercises judicial functions, and from an order rejecting a claim, in whole or in part, an appeal lies to the district court. The conclusion is therefore irresistible, from a consideration of the several sections of the statute already referred to, and the provisions of the constitution quoted, that the duty of the auditor in examining and adjusting claims presented against the state requires the exercise of judgment and discretion to determine not only whether such claim is a legal obligation, but whether the amount asked is justly due. After the auditor has passed upon and adjusted a claim and the secretary of state has approved the same, I concede the auditor then has no discretion in the matter of drawing his warrant upon the treasury for the amount found due.

This case comes squarely within the decision in *State v. Babcock*, 22 Neb., 38. The legislature of 1883 passed an act appropriating $6,824.14 to pay the expenses incurred in the trial of I. P. Olive and others for murder, which act named the persons and the amount of money each should receive, and authorized the auditor to draw a warrant for the several amounts due the parties named in the act. The relator applied for a *mandamus* to compel the auditor to audit his claim and to draw a warrant upon the

treasury for the same.  The court denied the writ.  It was insisted in that case that the duties of the auditor were ministerial, and that he had no discretion in the premises. The court, after quoting section 9 of article 9 of the constitution, say: "This language clearly implies a limitation upon the power of the legislature in the matter of auditing claims against the state.  The provision is imperative.  The legislature shall provide that all claims upon the treasury 'shall be examined and adjusted by the auditor and approved by the secretary of state, before any warrant shall be drawn or the money paid.  These officers are, by the fundamental law of the state, made the examining board through whose hands all claims must pass, and it is not within the power of the legislature to change this tribunal.  It cannot review the decision of these officers, for the section clearly points out the reviewing court.  The party aggrieved may appeal to the district court.  The fact that the appropriation is specific can have no weight whatever, for section 22 of article 3 of the constitution provides that 'no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law,' etc.  All appropriations of money from the treasury are specific, and 'all claims upon the treasury shall be examined and adjusted by the auditor,' etc.  There is no distinction in appropriations.  It is true that in the section (22, art. 3) above referred to it is provided that 'no allowance shall be made for the incidental expenses of any state officer except the same be made by general appropriation,' etc., but this provision can in no way change the fact that each appropriation contained in the general appropriation bill must be a specific appropriation for the purposes or offices named, and even then an account must be rendered 'specifying each item.'  Nothing could be more specific than such an appropriation.  No warrant can be drawn except in pursuance of an appropriation, but the auditor may examine and adjust claims in the absence of

such action by the legislature. While it is the duty of the legislature to see that no appropriations are made except for meritorious claims, yet such is the character of the safeguards thrown around the state treasury that such appropriation is by no means a final adjustment or auditing of the claim. It simply places so much of the funds in a position to be used by the auditor and secretary when the claim is examined and adjusted by the auditor, and his action is approved by the secretary. While the legislature may set apart money to pay a claim, it cannot pay it out, nor order it to be done, except in the manner provided by law. It has no jurisdiction to audit claims, and it is powerless to apply the money thereon without the *quasi*-judicial concurrence of the officers named. If money is appropriated by that body to pay a claim, such action is not an adjudication upon its validity to such an extent as to relieve the auditor and secretary from responsibility, for their duties remain as fixed by the constitution. This construction of the constitution has been adopted by the legislature as well as by the supreme court in its former decisions." The above decision was cited with approval and followed in *State v. Moore*, 37 Neb., 507.

*Towle v. State*, 3 Fla., 202, was an application for a *mandamus* against the comptroller of the state, to compel him to audit, allow, and pay a legal claim against the state. The circuit court awarded the writ, and the supreme court, on appeal, reversed this judgment and dismissed the action, holding the claim could not be enforced by *mandamus*. The statute of Florida defining the duties of the comptroller in the matter of examining, auditing, adjusting, and settling of accounts and claims against the state is substantially the same as the provisions of our statute. The third and fourth paragraphs of the syllabus in the Florida case are as follows: " Where a purely ministerial act is to be done and there is no other specific remedy, a *mandamus* will be granted ; but where the person against whom a *man-*

*damus* is prayed is invested with judicial power, or acts in a deliberative capacity, or has the power and right of deciding, the writ will not lie, except to compel him to proceed to the discharge of his duty by deciding according to the best of his judgment. The comptroller of this state, in the administration of the concerns of his office, is required to exercise judgment and discretion, and the courts cannot act directly upon him by *mandamus*, and thereby guide and control his judgment and discretion."

*Angle v. Runyon*, 38 N. J. Law, 403, is relied upon as an authority in the majority opinion. In New Jersey the office of the comptroller of the treasury is created by the legislature, and in that state there is no constitutional provision relating to the auditing of claims against the state, and the statutory provision upon the subject is not in all respects the same as our own. There the law directs that the comptroller "shall draw all warrants on the treasurer for the payment of all moneys directed by law to be paid out of the treasury." It might well be held under such a provision that when the legislature makes a specific appropriation of money the auditing officer has no discretion in the matter of drawing his warrant in favor of the party entitled to the appropriation. I do not think that authority should control the decision in this case, but prefer to follow the former adjudications of this court, to which reference has been already made. Under the construction adopted by the majority, there is nothing to prevent future legislatures from so framing appropriation bills as to completely deprive the auditor of the constitutional power of examining and auditing claims upon the state treasury.

I am of the opinion that the relator mistook his remedy. The statute has afforded him a plain and adequate remedy at law. He should present the claim of the county to the auditor, and if rejected, appeal from the decision. Where a party has an adequate remedy by the usual and ordinary proceedings at law, a writ of *mandamus* will not lie. This

is the settled law upon the subject. (*State v. Mayor of Omaha*, 14 Neb., 265; *State v. Kinkaid*, 23 Neb., 641.) While *mandamus* is the appropriate remedy to enforce the performance of acts on the part of public officers strictly ministerial, it will not issue to control the discretion of a public officer (*State v. Kendall*, 15 Neb., 262; *State v. Boyd*, 36 Neb., 60); nor to compel an officer exercising judicial functions to make a particular decision (*State v. Churchill*, 37 Neb., 702). Mr. High, in his work on Extraordinary Legal Remedies, after stating the rule as to the ministerial duties of auditing officers being controlled by *mandamus*, at section 102 says: "Where, however, auditing officers, entrusted by law with the duty of passing upon and determining the validity of claims against a state, are vested with powers of a discretionary nature as to the performance of their duties, a different rule from that above stated prevails. In such cases the fundamental principle denying relief by *mandamus* to control the exercise of official discretion applies, and the officers having exercised their judgment and decided adversely to a claimant, *mandamus* will not lie to control their decision, nor to compel them to audit and allow a rejected claim. The remedy, if any, for such a grievance must be sought at the hands of the legislature, and not of the courts; and where a state comptroller is vested with certain discretionary powers in the adjusting and settlement of demands against the state, he cannot be compelled to issue his warrant for the payment of a particular sum." Upon principle and authority, I am constrained to hold that the writ should be denied; and the importance of the question involved and the abuses and evils, as I conceive, liable to result from the construction given the constitution and statute by my associates, prompt me to dissent from the judgment pronounced.