STATE OF NEBRASKA, EX REL. M. H. SIMONS, V. JOHN F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS.

FILED MAY 18, 1897.  No. 9124.

1. **Claims Against State: VOUCHERS: STATUTE.** The act of April 8, 1895, entitled "An act to provide for a uniform system of vouchers * * * and for the affixing of an oath or affirmation thereto by the claimant," etc., applies to acts which by their terms appropriate a definite amount or so much thereof as may be required for a designated purpose.

2. ———: ———: ———. The sufficiency of section 4 of said act to require verification by affidavit of claims against the state, being conceded by relator, is not determined.

ORIGINAL application for *mandamus* to compel the auditor of public accounts to issue a warrant for the salary due the assistant clerk of the state banking board upon a voucher not verified by affidavit. *Writ denied.*

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for relator.

*William B. Price, contra.*

POST, C. J.

This is an original application by the relator, M. H. Simons, for a writ of *mandamus* commanding the respondent, John F. Cornell, as auditor of public accounts, to

issue to the said relator a warrant upon the state treasury in the sum of $250, on account of his salary as assistant clerk of the state banking board for the first quarter of 1897, at the rate of $1,000 per year. From the stipulation of the parties it appears that the respondent bases his refusal to issue the relator's warrant as demanded upon the sole ground that the latter has failed to comply with the provisions of the act approved April 8, 1895, entitled "An act to provide for a uniform system for vouchers for use for all disbursements of state funds through the auditing and treasury departments of the state, and to provide for the affixing of an oath, or affirmation, thereto by the claimant," etc. Section 1 of the act above mentioned requires the auditor of public accounts, within thirty days after the passage and approval thereof, to prepare blank forms of vouchers for use in all of the state's departments, and for the use of all manner of claimants against the state, etc. By section 2 it is provided: "All claims against the state to be paid as hereinbefore provided shall be extended in full on the voucher and fully and carefully itemized, and accompanied, in all instances where possible with the original bill or item of expense. Said bills or items or each of them shall give the exact date of purchase or service rendered, quantity purchased, name of article or service, price per item and total, and shall be properly signed by the party to whom the claim is payable, or his or its agent or attorney, or a member of the firm, and shall be signed in full by the name of the claimant, and where the same may be a firm or corporation, after the name of such firm or corporation, the person so signing such firm or corporate name shall sign his or her name." Section 3 provides that all original vouchers shall have printed thereon the following oath:

"THE STATE OF NEBRASKA,  } ss.
    COUNTY OF ———,

"I, ———, do hereby solemnly swear that the above and foregoing account and voucher is a true, correct and

complete statement of the account of ———— for supplies, or services for the state of Nebraska, as therein recited, and that the items, or services therein, were fully delivered or rendered to said state and that the charges therein made are the legal, just and usual charges for said supplies, or services; and that said bill nor any part thereof has not been paid heretofore by the state, but that the same is now wholly due and unpaid; and that I am the ———— of the firm or corporation signing said voucher and that I am fully conversant with the items charged herein and that in all manner and things this is a true, just and correct charge and item of indebtedness against the state of Nebraska.

"————  ————
"————  ————"

It is by section 4 provided: "The foregoing oath or affirmation shall be complete in every instance and the claimant, his agent or attorney so subscribe and swear to said claim as in section 3 provided and the same shall be acknowledged by an officer having a seal," while by section 5, the making of a false oath or affirmation to any material thing in said act provided for is declared to be perjury and punishable accordingly.

The relator admits that he has neglected and refused to verify or prove his account against the state by affidavit or otherwise, but justifies his said refusal upon the ground that the legislature has appropriated a fixed and definite sum for his salary, and that it is the duty of the respondent to take notice of his claim to pay the same when due without proof of any character. That it is the right and duty of the respondent as auditor of public accounts, under the provisions of section 9, article 9, of the constitution, to examine into, and, in case of doubt, to require proof of, any claim for which a definite appropriation has not been made, certainly cannot be denied. (*State v. Moore*, 40 Neb., 854.) It is, aside from the exceptional cases mentioned in *State v. Moore*, *supra*, extremely probable that the auditor of public accounts

might, in his discretion, independent of the statute, require each claimant against the state to verify his account by affidavit, as a condition precedent to the drawing of a warrant therefor. There is, too, it should be observed, room to doubt whether in view of the exceedingly vague and equivocal language employed in section 4, above quoted, the act of 1895 can be said to have added anything to the law of the subject. That question is, however, foreign to the present controversy, since the parties have, by their stipulation, narrowed the field of investigation to a single inquiry, viz., whether the statute mentioned was intended to apply to acts which, like that here involved, appropriate a definite sum, or so much thereof as may be required for a particular purpose. Section 1 of chapter 87, Laws, 1895, provides: "That the following sums of money, or so much thereof as may be necessary, are hereby appropriated out of any moneys in the state treasury not otherwise appropriated, for the payment of salaries of officers of the state government: * * * Department of Banking—Salary of one assistant clerk, one thousand ($1,000) dollars; two thousand dollars." There is, aside from the foregoing, no statutory mention of the assistant clerk of the banking board. The respondent is not, so far as we are advised, charged with notice of the selection of this class of officers, the terms of their employment, or the amount or value of their services, which lends support to respondent's contention that the primary purpose of the act quoted was to protect the state against fraud in claims of the class of that here involved. And if from the operation of the statute is to be excluded this class of cases, then it is indeed entirely nugatory, since it is impossible to conceive of any case to which it can be held to apply. These considerations lead to a conclusion adverse to the relator, and the writ is accordingly denied.   ·

WRIT DENIED.