State, ex rel. Garneau, v. Moore.

STATE OF NEBRASKA, EX REL. JOSEPH GARNEAU, JR., COMMISSIONER GENERAL, v. EUGENE MOORE, AUDITOR OF PUBLIC ACCOUNTS.

FILED JULY 14, 1893.    No. 6332.

1. **Legislative Appropriations**: CLAIMS AGAINST STATE: APPROVAL: DUTIES OF STATE OFFICERS. Under the provisions of section 9, article 9, of the constitution, all claims upon the state treasury are to be examined and adjusted by the auditor and approved by the secretary of state before any warrant for the same shall be drawn. This applies to all appropriations, specific as well as general.

2. ———: ———: COMMISSIONER GENERAL: VOUCHERS. The original vouchers approved by the commissioner general are to be presented to the auditor so that he may see that the claim is one for which an appropriation has been made.

ORIGINAL application for *mandamus.*

*A. J. Sawyer,* for relator.

*George H. Hastings, Attorney General, contra.*

MAXWELL, CH. J.

This is an application for a *mandamus* to compel the auditor to draw his warrant on the state treasury of Ne-

braska for the sum of $5,000 from the funds appropriated, in said act and now in the state treasury, and deliver the same to the relator. The defendant has filed an answer in which he admits many of the allegations of the petition, but denies that the relator has devoted his entire time and attention to the duties of his office; and denies that the expenditures mentioned in the petition were all necessary, just, and proper; and denies that the estimate for said $5,000 was accompanied by proper vouchers. The petition is accompanied by a copy of the act of the legislature approved April 8, 1893, and by a large number of vouchers and estimates submitted by the relator to the auditor, covering moneys heretofore drawn. Among the estimates and vouchers filed we find charges for hotel bills and other like charges, and most of the estimates are not accompanied by vouchers of the parties rendering the services or furnishing the materials.

Section 9, article 9, of the constitution provides that the legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state before any warrant for the amount allowed shall be drawn; *Provided*, That the party aggrieved by the decision of the auditor and secretary of state may appeal to the district court. The construction of this provision of the constitution was before this court in *State v. Babcock*, 22 Neb., 38. In that case the legislature had passed an act to provide for paying the expenses incurred in the prosecution of Olive for murder. The court held that the constitution requires that all claims upon the state treasury must be examined and adjusted by the auditor, and his action approved by the secretary of state, before any warrant can be drawn therefor, and this provision applies to all claims, whether claimed by virtue of a specific appropriation or not.

In *State, ex rel. Dales, v. Moore*, 36 Neb., 579, this court held that the original vouchers must be presented to the

auditor for him to act upon. This seems important in order that the auditor may determine that the claim is one 'for which the legislature has provided an appropriation. If it ·is not, it is his duty to refuse to draw a warrant. The auditor draws every warrant at his peril, and if he draws a warrant without authority of law, he and his sureties are liable ·for the same. This would seem to be important in this case. A number of claims are presented to the auditor that are clearly for expenses. The relator is paid a salary of $2,000 per year; he is also entitled to his traveling expenses. In estimating traveling expenses, however, they would be simply compensation for going from his home to Chicago, and from Chicago to his home. If in the meantime he desires to return home, and from thence to Chicago, he must do so at his own expense. The return is for his own convenience, and must be at his own expense. The original vouchers must in all cases be sent to the auditor. The commissioner should approve the same before sending them. The auditor will then have the evidence of the debt before him and will know whether it is such a claim as the legislature has provided an appropriation for. If it is, it is his duty to draw a warrant; if it is not, then he should refuse. He is not to draw a warrant upon mere estimates, and as the application in this case is to draw upon a mere estimate, the writ of *mandamus* must be refused.

It may be said that this will occasion inconvenience by causing delay in the payment of claims; but not necessarily so. Lincoln is but sixteen hours from Chicago, and claims sent one day can be returned not later than the third day, so that there will be no great delay. In any event, the constitutional provision applies to all claims, including the claims in question, and the construction heretofore placed upon the provision must be adhered to. The writ is

DENIED.

NORVAL, J., concurs.

Post, J., dissenting.

I dissent from the conclusion of the majority ot the court in this case for reasons which will hereafter appear.

In order that the questions involved may be clearly understood it is necessary to set out parts of the pleadings.

The first and part of the second paragraph of the petition is merely a history of the legislation upon the subject of the exhibition of the resources of the state at the World's Columbian Exposition, the creation of the office of commissioner general, and the appointment and qualifications of the relator as such commissioner. The other allegations of the petition are as follows:

"That up to July 3, 1893, there had been paid out and expended for the promotion of Nebraska's exhibit at the World's Fair upwards of $55,000, all of which moneys have been drawn from the treasury of Nebraska upon warrants issued by the auditor of said state upon estimates furnished him by the Nebraska Columbian Commission and by this relator, $20,000 of which has been drawn as aforesaid upon estimates furnished by this relator as commissioner general under said act passed by the last legislature, and that there is now in the treasury of the state of Nebraska, not otherwise appropriated, for the purpose of promoting and conducting said Nebraska exhibit at the World's Fair, $29,546.73.

"3. That on the 17th day of June, 1893, the respondent Eugene Moore, who is the auditor of public accounts for the state of Nebraska, drew his warrant on the state treasury against the fund appropriated in said act for the sum of $5,000 for the relator upon the relator furnishing to him, the said respondent, an estimate for $5,000 for future expenses, and in connection therewith the items of expenditure paid by relator, the date of the expenditure, to whom paid, and for what purpose each item had been paid, accompanied by detailed estimates of the expenditures, with vouchers.

" 4. That relator afterwards cashed said $5,000 warrant and laid out and expended the proceeds thereof in the proper presentation of the products, resources, and possibilities of the state of Nebraska, and in paying for such labor and necessary expenses in connection therewith as were necessary, just, and proper, and in addition thereto $1,096.42; and on the 3d day of July, 1893, relator furnished respondent an estimate for $5,000 more which would be necessary to meet current bills and expenses due and likely to become due in connection with said Nebraska exhibit, the items composing said estimate being as follows:

Balance on swine exhibit................................ $750
Salaries ................................................ 2,000
Incidentals ............................................ 500
Furnishing account .................................... 1,750

        Total......................................$5,000

and requested the respondent to draw his warrant on the state treasury against the funds appropriated in said act for said purposes in favor of the relator. The relator, at the time of furnishing said estimate to said respondent, furnished an estimate showing the items of expenditures paid by relator, the date of payment, to whom, and for what purposes each item had been paid, together with a detailed statement of the expenditures, with the proper vouchers. Said estimate is hereto attached and marked Exhibit A and made a part of this petition. Said vouchers, showing the items of expenditures, together with the dates of payment, to whom and for what purposes each item was paid, together with a detailed statement of the expenditures, are hereto attached and made a part of this petition and are numbered from one to seventy-seven, inclusive; also a recapitulation of the expenditures, which is hereto attached and made a part of this petition, and marked Exhibit B.

" 5. That under the provisions of said act the relator is entitled to receive a salary of $2,000 per annum, payable

quarterly, from the moneys appropriated in said act, and in addition his traveling expenses each day devoted to his official services as duty may require, and he is authorized and empowered to appoint assistants and employ such clerical and other force as he may find necessary for the successful presentation of his work, the same to be paid from the funds appropriated by said act, and this relator says that he has devoted his exclusive time and services to the promotion of said work and that he has appointed such assistants and employed such clerical and other force as he has found necessary and proper for the successful presentation of said work and no more, and has procured the same at as little cost as possible, and that all of the items of expense, labor, and material for which said itemized accounts have been rendered are just and reasonable.

"6. That said respondent, though often requested, has refused and still refuses to draw his warrant on the state treasury against the funds appropriated in said act for the promotion of the cause therein mentioned in favor of relator.

"7. That in order to carry on and promote the Nebraska exhibit at the World's Fair large expenses are daily incurred; and without the moneys can be speedily furnished to meet said expenses by a warrant drawn upon said appropriation, the objects for which said appropriation was made must necessarily fail, and the exhibit closed; that the relator is without any adequate remedy at law, and without any funds drawn from said appropriation."

Exhibit B is an itemized statement of sums paid to parties therein named, seventy-four in number.

The material parts of the answer are as follows: ·

"He admits all the allegations to be true contained in paragraph 1 of said petition.

"2. This defendant admits all the allegations contained in paragraph 2 of said petition to be true except 'that said commissioner general has, ever since the date of his appoint-

ment, devoted his entire time and attention to the duties of his office to the best of his ability and understanding."

"3. The defendant admits all the allegations contained in the 3d paragraph of the plaintiff's petition to be true.

"4. The defendant, further answering, admits all the allegations contained in the 4th paragraph of the defendant's petition to be true, except such as are hereafter denied. The defendant denies that the expenditures mentioned in the 4th paragraph were all necessary, just, and proper. The defendant further denies that the estimate for $5,000 was accompanied with proper vouchers.

"5. Further answering the petition of the plaintiff, the defendant admits all the allegations contained in the 5th paragraph, except such as are herein denied. The defendant denies that the relator has devoted his exclusive time and services to the promotion of the duties of commissioner general, and further denies that said commissioner general employed such assistants and clerical help and other force as was necessary and proper for the successful presentation of said work and no more, and has procured the same at as little cost as possible, and that all the items of expense, labor, and material for which said itemized accounts have been rendered are just and reasonable.

"6. The defendant admits the allegation of the 6th paragraph of the plaintiff's petition to be true.

"7. The defendant admits the allegation contained in the 7th paragraph of the plaintiff's petition to be true, except that the defendant does not admit that the plaintiff is without funds drawn from said appropriation except as recited in the vouchers filed herewith."

It will be seen from a careful scrutiny of the answer that the allegations of the petition are all admitted except the following:

First—That the relator has since his appointment devoted his entire time and attention to the duties of the office according to the best of his ability.

36

Second—That the purposes for which the $5,000, drawn June 17, were expended are all necessary, just, and proper.

Third—That the estimate of July 3 was accompanied with proper vouchers.

Fourth—That the assistants employed by the relator were necessary, or that the labor or material enumerated in the itemized account just and reasonable.

The first denial certainly tenders no issue of fact. It is at most a mere conclusion and not sufficient to put the relator upon his proof. If he has been derelict in his duties and has failed to devote his time and abilities to the work in hand within the knowledge of the respondent, the latter would be justified in refusing payment of the full amount of salary provided therefor. But in such case he could not rest upon a mere denial. The rule has never been questioned, to my knowledge, that where an officer is charged with misconduct, such as a culpable neglect of duty, the presumption is in his favor and the burden upon the party asserting such misconduct. (See Phillips, Evidence, 151; *Hartwell v. Root*, 19 Johns. [N. Y.], 345*; 19 Am. & Eng. Ency. of Law, 44, and notes.) In order to justify the respondent in refusing to pay the relator's salary on that ground he is required to tender a definite issue by setting out the particular act or acts of delinquency relied upon.

The denial "that the expenditures mentioned in paragraph 4 were all necessary, just, and proper" is palpably bad. The relator, in the schedule attached to his petition, has set forth in detail the amounts disbursed and to whom paid, while the vouchers referred to show the purposes for which the money was expended. A denial, therefore, that all of such items were just and proper is a mere conclusion, and presents no issue. In *McLaughlin v. Wheeler*, 47 N. W. Rep. [S. Dak.], 816, the distinction between a denial and a negative pregnant is thus stated: "If plaintiffs had pleaded the facts out of which the indebtedness re-

sulted as a conclusion, a denial of such conclusion would have been insufficient to make an issue, but having alleged the indebtedness as a fact we think the defendants might so treat and so deny in their answer." (See also Maxwell, Code Pl., 789, where the last named case is cited with approval.)

The denial that the estimate of July 3 "was accompanied by the proper vouchers" is a mere conclusion and tenders no issue. Tested by all rules of pleading it should be construed as going to the form and legal sufficiency of the vouchers and not traversing the facts stated in the petition.

By denying that the assistants employed or the material procured are necessary or reasonable, I understand the auditor to assert the right to review the actions of the relator, and in effect to control his discretion in the disbursement of the money appropriated, in order to give effect to the declared intention of the legislature. To that proposition I cannot assent. It is clear that the legislature intended to make the commissioner the sole agent for the disbursing of the money, and to hold him to a strict account for the execution of the trust thus imposed. For instance, it is provided in section 2 of the act in question that the commissioner "shall have sole and exclusive charge of the management, collecting, presenting, and dismantling of the products and industries of the state at the exposition. * * * He shall be the sole receiving and disbursing officer, through whose hands all moneys drawn and expended must pass. He shall give bonds, approved by the governor, in a sum not less than thirty-five thousand dollars ($35,000)."

By section 3 it is provided that the money appropriated by the act can be drawn only upon estimates made by the commissioner general.

By section 4 it is provided that the commissioner shall receive a salary of $2,000 per year, payable quarterly, and

in addition his traveling expenses for each day devoted to his official services, as duty may require. He is authorized and empowered to appoint assistants and employ such clerical and other force as he may find necessary for the successful presentation of his work.

By section 5 it is made his duty at the close of his service to render a "complete financial statement of receipts and expenditures."

But I understand the majority of the court to hold that the act in question, in so far as it provides for the payment to the commissioner of the money appropriated upon estimates, is unconstitutional and void. It is not pretended that such limitation upon the power of the legislature is expressed in the constitution. Nor can it, in my opinion, be said to exist by fair or reasonable implication from any of the provisions therein. The only sections which have any bearing upon the subject are section 22 of article 3, and section 9 of article 9, which are as follows:

"Sec. 22. No allowance shall be made for the incidental expenses of any state officer, except the same be made by general appropriation and upon an account specifying each item. No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon, and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution. The auditor shall, within sixty days after the adjournment of each session of the legislature, prepare and publish a full statement of all moneys expended at such session, specifying the amount of each item, and to whom and for what paid."

"Sec. 9. The legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state before any warrant for the amount allowed shall be drawn; *Provided*, That a party aggrieved by the decision of the

auditor and secretary of state may appeal to [the] district court."

The above provisions were intended to restrict the application of money raised by taxation to the purposes for which it is appropriated, and not as a limitation upon the discretion of the legislature in selecting the agencies through which it is to be expended. Such is, in my view, the only reasonable or natural construction, the one upon which the legislature and the executive officers of the state have acted since the adoption of the constitution. In the payment of the current expenses of the state, and the greater part of the money appropriated for other purposes, the auditor acts upon the original vouchers, which are said to be the primary evidence, and the law in such cases contemplates that they shall be furnished, or other satisfactory proof of payment made, before warrants are drawn therefor. But appropriations of the kind involved in this case are an exception to the rule. Here the auditor has discharged his whole duty in the examination of the claim when he has ascertained that it is for money the payment of which has been expressly ordered by the legislature out of funds appropriated therefor, and for a purpose authorized by the constitution. Fraud is of course an exception, and may be interposed as a defense whenever discovered. But to hold that the auditor may in this case refuse to pay the money which the law-making power has seen fit to appropriate in the interest of the state, on the ground that he may honestly differ with the commissioner as to the necessity or propriety of the supplies purchased, the amount or character of the assistance employed or the compensation allowed therefor, is to sanction a flagrant usurpation of power by him and the exercise of a discretion which is in express terms entrusted to another. I must not, however, be understood as calling in question the motives of the auditor, who, it is plain, has acted in good faith, although from a mistaken sense of duty.

The views herein expressed with respect to the legality of the provision for payment of the appropriation to the commissioner are in harmony with prior decisions of this court.

In *State v. Wallichs*, 14 Neb., 439, it was held that there was no authority for the employment of clerks of the committees of the legislature, and a voucher for services so rendered would not authorize the drawing of a warrant therefor by the auditor.

In *State v. Babcock*, 22 Neb., 38, the act was construed as authorizing payment only of the amount due the relator, notwithstanding the language of one section, without reference to the other provisions of the act, seems to indicate an intention to appropriate a specific amount. It is true Judge REESE, on page 47, says, " when they [claims] are presented and that if he [the auditor] finds the claim illegal or unjust or that it has been paid he should refuse to issue his warrant," etc. By the term unjust I understand the writer to mean fraudulent or unlawful, and not to intimate, as claimed in this case, that the auditor is possessed of the power to review the actions of other public officers in order to determine whether they have properly exercised the discretion with which they are invested by law. It will be observed, too, that the question of pleading is not discussed in that case, hence it is not authority for the proposition that the auditor is justified in denying payment of claims apparently valid without alleging sufficient reasons for his refusal.

The only question involved in *State, ex rel. Dales, v. Moore*, 36 Neb., 579, was the right of the regents of the university to draw money appropriated by the legislature of 1891 for a library building without presenting the vouchers therefor. The right was denied by the court on the ground that the act expressly provided that the money should be drawn upon the presentation of vouchers. In no prior case has the question under discussion been presented or considered. We are at liberty, therefore, to give to the provisions of

the constitution involved that meaning which seems obviously sound according to recognized canons of construction, among which are that words are to be used in their natural sense, and that an act will not be declared invalid by the courts unless so plainly and irreconcilably in conflict with the constitution as that no reasonable doubt thereof can be said to exist. (*Pleuler v. State*, 11 Neb., 547; *McClay v. Lincoln*, 32 Id., 412.)

The power to advance money upon estimates to disbursing officers of the state may be a dangerous power, because of its liability to abuse, but that is a question of legislative policy and involves the exercise of a discretion which the judicial power of the state should not assume to control. My first impression was that the writ should be denied on the ground that the relator's remedy was by appeal to the district court, but upon a closer inspection of the record, it does not appear that any such action has been taken by the respondent as contemplated in *State v. Babcock, supra.* A final order, such as would give the claimant the right to appeal, is an estoppel by judicial act; in other words, a judgment, which should be pleaded when relied upon in a collateral proceeding. It is made the duty of the respondent to audit claims when presented; that is, to determine, upon examination, whether they are legal demands against the state, and whether he is authorized to pay them. If so, it is his duty, after approval by the secretary of state, to draw warrants against the appropriations out of which they are payable. If he neglects or refuses to discharge that duty after demand, it will be enforced by *mandamus* upon the relation of the party in interest. Nor is it a sufficient answer in such case to say that the items included in the aggregate of claims are not all chargeable to the state. His duty is to draw his warrant for such as the state is liable for and reject all others. In support of this well-settled rule it is sufficient to cite the leading cases of *People v. Board of Supervisors of Delaware County*, 45 N. Y., 196, and *State v. Warner*, 55 Wis., 271.

If it is true that the itemized statement presented by the relator includes charges for his board and personal expenses at the exposition (although I find nothing in the record to support such a contention), it was the duty of the respondent to reject them, because unauthorized by law; but that fact will not excuse a refusal to act upon the other items.

It must be borne in mind that the respondent does not attempt to justify his refusal upon the ground that the demand of the relator or the prayer of the petition is too broad, but rests his defense upon the one proposition, viz., that certain of the items paid out of the proceeds of warrants previously drawn are not proper charges against the state. It is clear to me, therefore, that the judgment should have been for the relator.