[Civil No. 4266.   Filed July 1, 1940.]

[103 Pac. (2d) 956.]

W. R. HUTCHINS, as State Highway Engineer, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. A. R. Lynch and Mr. Charles L. Strouss, for Petitioner.

Mrs. Ana Frohmiller, State Auditor, *in Propria Persona.*

LOCKWOOD, J.—W. R. Hutchins, hereinafter called petitioner, brought an original proceeding in *mandamus* in this court to compel Ana Frohmiller, as auditor of the state of Arizona, hereinafter called respondent, to issue warrants to petitioner in payment of certain claims against the state. These claims were set forth in six separate counts, the first including both an original and an assigned cause of action.

Respondent demurred to the petition on two grounds, (a) that the first, second, third and sixth counts did not state facts sufficient to constitute a cause of action, in that they showed the expenditures on which they were based were not made for a public purpose, and (b) to all the counts on the ground that the petition does not show that petitioner has exhausted the remedy afforded him by law, in that he failed to follow the procedure set forth in section 28, Revised Code 1928, before the bringing of this action. Respondent also raised the same issues by answer, alleging (1) that all of the claims on which the petition was based showed on their face that they were not for a purpose authorized by law, and (2) that they had not been presented for approval in the manner required by law.

We consider first the demurrer. It is a well-accepted rule that the state may adopt whatever method it prefers to determine whether it is liable upon or shall discharge a given obligation. It may select agents for this purpose to pass on the question, and provide that a claim shall be paid only upon the determination of such an agent. *State* v. *Kelly,* 27 N. M. 412, 202 Pac. 524, 21 A. L. R. 156. Under this power

the legislative authority, in the absence of constitutional restrictions, may provide any method it desires to be followed in presenting claims, and may make this method a condition precedent to the allowance and payment of such claims, and unless and until it is followed no action will lie against the state in its courts to enforce the payment of the claim, no matter how great may be the obligation. *State* v. *Stout*, 7 Neb. 89; *Phelps* v. *Auditor General*, 136 Mich. 439, 99 N. W. 374; *People ex rel. Evers* v. *Glynn*, 126 App. Div. 519, 110 N. Y. Supp. 405; *State ex rel. Garneau* v. *Moore*, 37 Neb. 507, 55 N. W. 1078, 56 N. W. 154; *Lincoln Safe Dep. & Trust Co.* v. *Weston*, 72 Neb. 536, 101 N. W. 16.

In the case of *Yavapai County* v. *O'Neill*, 3 Ariz. 363, 29 Pac. 430, in construing the statutes relating to claims against counties, we held that while our statutes did not expressly provide that no action can be brought before a presentation of a claim against a county in the manner provided by law, yet that is the necessary implication, and that the method provided by statute for presenting a claim must be followed as a condition precedent to any action in the courts thereon. The same reasoning applies to claims against the state. We think, therefore, both on authority and reason, that before any action may be brought against a state officer, whether it be by *mandamus* or otherwise, to enforce the payment of a claim against the state, it must appear affirmatively that the claimant has first followed the method of presentation of the claim for approval set forth by the statutes, and only after it appears he is unable to secure an approval and payment of a legal claim in that manner will he be permitted to apply to the courts for redress. Let us determine then what is required of one who has a claim against the state before he may resort to the courts for its enforcement.

We have stated in the cases of *Ward* v. *Frohmiller,* *ante,* p. 202, 100 Pac. (2d) 167, and *Proctor* v. *Hunt,* 43 Ariz. 198, 29 Pac. (2d) 1058, that these requirements are found in sections 2619 and 28, Revised Code 1928. The first requirement is that an itemized claim be presented to the head of the department who, by law, must authorize and approve the expenditure, under section 2619, *supra,* and if his approval is obtained, it must then be presented to the state auditor for approval under section 28, *supra.*

A history of section 28, *supra,* is important as indicating the changed policy of the legislature upon a vital point in regard to the auditing of claims against the state. The Civil Code of 1913 provided for the method in which claims should be presented for approval, as follows:

"73. Persons having claims against the state shall exhibit the same, sworn to, with the evidence in support thereof to the auditor, to be audited, settled and allowed, within one year after such claim shall accrue, and not afterwards; and no claim shall be audited or allowed the items of which are not specifically and fully stated and set out."

"70. He [the auditor] shall: (1.)—Audit and settle all claims against the state, payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by some other officer or person.

"(2.)—Draw all warrants upon the treasury for money, except only in cases otherwise expressly provided by law. . . . "

"77. In all cases of claims duly audited and allowed by the auditor as legal and proper charges against the state, and in all cases of specific appropriations, salaries, pay, or expenses, provided for by law, the auditor shall draw a warrant on the treasurer of the state for the amount as allowed in the form required by law, and notify the state treasurer, provided an appropriation has been previously made for such purpose."

"72. All warrants issued by the state auditor, as authorized by law, must be countersigned by the governor of the state before presentation to the state treasurer for payment or endorsement, and in case of absence of the govenor from the state the said warrants shall be countersigned by the secretary of state, and unless so countersigned said warrants shall not be considered complete in form or effect, as legal obligations against the state."

It will be seen upon an examination of these sections that the claimant was required to present an itemized and verified claim to the auditor; that thereafter the auditor examined and settled the claims, and if they were legal and proper charges, drew a warrant upon the treasurer, which was countersigned by the governor, and thereafter the warrant became a legal obligation against the state. No other person was given any discretion in passing upon the claims except the auditor, the action of the governor when the claim was approved by the former being ministerial only. *Winsor* v. *Hunt,* 29 Ariz. 504, 243 Pac. 407. If then the auditor, for any reason, disapproved a claim so presented every condition precedent to a review of his action by the courts had been performed, and a claimant might bring such action as was appropriate under the circumstances, for there was no requirement then that a claim must first be presented to the head of the department affected and approved by him.

In chapter 88, regular Session Laws of 1921, the legislature amended subdivision 1 of paragraph 70, *supra,* to provide that the auditor should

"(1) . . . Audit, adjust and settle the amount of claims against the state payable out of the funds of the state except only such claims as may be expressly required by law to be audited and settled by some other officer, board, commission, or department. The auditor shall have power to investigate each and every claim presented to him as a claim upon which a war-

rant is to be drawn upon the state treasury. And in the event such an investigation appears to disclose that all or any portion of any claim so presented is not for an actual public purpose, connected with the activities of the office, board, commission, or department where the investigated claim originated, the auditor shall refuse to draw a warrant, except for such amount of each claim as appears to be for an actual public purpose. He shall submit his reason for rejecting all or any portion of claims for which he refuses to draw a warrant to the office, board, commission, or department, and a warrant *shall not be drawn* therefor until a new claim, fully itemized, stating specifically the actual public purpose of, and the necessity for each particular item or amount of expenditure referred to in the auditor's statement of reasons, is presented to the auditor properly verified by the oath of the person making the expenditure so in question, and again approved for audit and warrant by the officer, board, commission, or department which in the first instance audited the rejected claim. In event such verified claim is not filed, or if re-filed, in event that it does not then appear that a public purpose is in fact involved respecting the claim thereof, *the auditor shall have power to again reject the claim,* and report the fact of such rejection to the Governor, and *no warrant shall be drawn thereon, unless the Governor specifically approves the claim* in whole or in part." (Italics ours.)

As will be seen, this changes the method of presenting and passing upon claims against the state in many material respects. Instead of providing for one presentation and a decision by the auditor thereon, it requires that when a claim is presented he shall investigate the claim, and unless it is for a public purpose he shall "refuse to draw a warrant." This, however, does not terminate his duties. He must then submit his reasons for rejecting the claim to the department in which it originated, and the statute expressly says: "A warrant shall not be drawn" until a new claim in the form set forth in the section is *again* pre-

sented to the auditor, and considered by him. He may then either approve or again reject the claim, and in the latter case he must report the fact to the governor, and the statute continues: "No warrant shall be drawn thereon, unless the Governor specifically approves the claim in whole or in part." It will be seen that unless and until the claim is approved either by the auditor on its first or second presentation, or by the governor after it is a second time rejected by the auditor, *the statute expressly forbids the issuance of any warrant.* We think no clearer declaration could be made by the legislature that a warrant should not and could not be drawn until it had been approved by either the auditor or the governor, and that *they must be given opportunities to either approve or disapprove,* the auditor twice and the governor once, and not until a final disapproval by the governor would the judicial department have a right to review their action on the request of claimant. This is particularly true when the review is sought by *mandamus.* *Mandamus* lies only to compel an officer to perform a duty concerning which he has no discretion, and which he has refused to perform. It might well be that a claim disapproved by the auditor on the first presentation would be approved by him when a more complete one was filed, as required by section 28, *supra,* and even if he disapproved the second claim, it is immediately his duty to then submit the claim to the governor who, under such circumstances, may override the action of the auditor and approve the claim, and the action of the auditor would then become ministerial and subject to compulsion by *mandamus.* *Ward* v. *Frohmiller, supra.* How can we say that no discretion is left to the auditor in regard to the claims involved when the claimant has failed or refused to follow the plain language of the statute and give the auditor and gov-

ernor an opportunity to approve or reject the claims in the manner required by law?

It will undoubtedly be urged that we have many times in the past few years considered an application for a writ of *mandamus* against the auditor when it did not appear that the claim had been twice presented, and, if rejected a second time, also presented to and rejected by the governor. This is true, but the question under consideration was not raised nor decided by us in any of the former cases and is before us for the first time. We see nothing in the case of *Proctor* v. *Hunt, supra* [43 Ariz. 198, 29 Pac. (2d) 1060], which bears upon it. We stated in that case if a claim is "on its face, for a public purpose and is properly itemized and accompanied by vouchers, and an appropriation has been made by law for that purpose, it is the mandatory duty of the auditor to approve said claim and to issue a warrant therefor; no discretion being given, if the matters recited before-hand appear in the claim as presented," and this, of course, is true, for neither the auditor nor the governor may lawfully reject a claim which is for a public purpose, as we have defined it in the case of *Ward* v. *Frohmiller, supra.* But these officials must necessarily use their independent judgment on every claim presented to them to determine whether the claim is or is not for a "public purpose," and before any court may review their conclusion on this point they must be given the opportunity required by the statute to make a final decision on the matter.

Since it fails to appear in the petition that the auditor and governor were given the opportunity to pass on the claims, as required by the statute, or that they did either affirm or reject them finally, the conditions precedent to a review of their conduct by the courts were not complied with in regard to any

of the claims, and the demurrer to the petition should have been sustained. This does not, of course, prevent petitioner from presenting the claims in the manner required by section 28, *supra,* and if they are, when thus presented, rejected by both the auditor and the governor, a proceeding of this nature would properly raise the issue of whether, as a matter of fact and law, they were for a public purpose and authorized by law.

The alternative writ heretofore issued is quashed.

ROSS, C. J., and McALISTER, J., concur.