309 P.2d 779

Harold C. GISS, as a Member of the Senate
of the Twenty-Third Legislature of the
State of Arizona, and J. O. Grimes, as a
Member of the House of Representatives
of the Twenty-Third Legislature of the
State of Arizona, Petitioners,

v.

Jewel W. JORDAN, State Auditor of the
State of Arizona, Respondent.

No. 6408.

Supreme Court of Arizona.

April 6, 1957.

Udall Pace, Yuma, Snell & Wilmer, Perry M. Ling, Phoenix, for petitioners.

Robert Morrison, Atty. Gen., for respondent.

UDALL, Chief Justice.

This is an original proceeding in this court, initiated by Honorable Harold C. Giss, a member of the Senate, and Honorable J. O. Grimes, a member of the House of Representatives of the Twenty-third Legislature of the State of Arizona. Petitioners seek a peremptory writ of mandamus to compel respondent Jewel W. Jordan, state auditor, to approve their claims as submitted and to draw her warrants therefor on the state treasurer, for the payment of certain sums claimed to be due them under the provisions of section 41-1103, A.R.S., for expenses incurred as legislators "for subsistence, incidentals, lodging and other expenses". The respondent questioned the constitutionality of the Act —as it is construed by petitioners—and has thrice refused to make the payments therein provided unless there were compliance with other statutory requirements, hereinafter set forth. Her last refusal was after the Governor of Arizona, acting under the provisions of section 41-141, A.R.S., had approved said claims. We assumed original jurisdiction and issued an alternative writ of mandamus.

In respondent's answer to the alternative writ it is stated:

"* * * Respondent denies that she has refused to approve and issue a warrant for reimbursements to the members of the legislature for money expended by them for actual and necessary lodging, subsistence and incidental expenses in the aid of the performance of their duties and responsibilities while in attendance at sessions of the State Legislature, other than she has refused to approve the claims which are the subject matter of this action because they do not disclose sufficient information to discharge her duties as State Auditor pursuant to A.R.S., section 41-141.

\* \* \* \* \* \*

"As a further and separate defense, Respondent alleges that she is and has

been willing to approve claims for reimbursements to members of the legislature, including petitioners, and that she has been and is approving and issuing warrants for reimbursements for approximately 100 members of the present legislature; that she is requiring that such claims for reimbursement be made on a form itemizing the reimbursements claimed and requiring that the same be made under oath by the individual members of the legislature, or that in lieu thereof she is requiring that receipts supporting the claims be provided the Respondent, in order that she may be able to carry out her duties as State Auditor pursuant to A.R.S., section 41-141, so that she can ascertain that the claims are consistent with the provisions of Article 4, part 2, sections 1 and 17 of the Arizona State Constitution."

The pertinent provisions of the constitution referred to above read as follows:

"(2) From and after the adoption of this amendment members of the legislature shall receive $8.00 per day * * *." Art. 4, Pt. 2, section 1 (2).

*"Extra compensation prohibited; increase or decrease of compensation during term of office.*

"Section 17. The Legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer, * * * be increased or diminished during his term of office * * *." Art. 4, Pt. 2, section 17.

In order to better understand the position of respondent we deem it necessary to refer to some legislative and judicial history on this matter of subsistence and lodging expenses for members of the legislature. Prior to the year 1947 no such expenses had ever been allowed. The Eighteenth Legislature enacted Chapter 16, Laws 1947 (as amended see, section 41-1103, A.R.S.), the pertinent part thereof reading:

"Section 1. Reimbursement Of Members Of Legislature. Any member or employee and officer of the legislature, while absent from his usual place of residence in the service of the state during a session of the legislature, shall be reimbursed for his actual and necessary expenditures for subsistence and lodging, not to exceed the sum of ten dollars per day. All claims for reimbursement as provided in this Act shall be filed as other claims against the state, and shall be accompanied by receipts or vouchers evidencing such expenditures."

It will be noted that this Act provided (a) for expenses only for those members who

were away from their usual place of residence, (b) reimbursement only to the extent that claims were supported by receipts or vouchers, and (c) a maximum limitation of ten dollars per day. Furthermore, the Act provided that claims thereunder should be filed and audited "as other claims against the state", i.e., there was no effort made to bypass the state auditor's scrutiny of such claims. The constitutional validity of this Act was upheld by us in the case of Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436. The true rule announced in that case is that the legislature might provide *reimbursement* for legitimate expenses incurred by its members —i.e., actual "out-of-pocket-cash" expenditures.

The respondent nowise questions this holding. In fact the attorney general, as her counsel, expressly concedes, (1) "reimbursement to members of the legislature *for actual cash outlays* necessarily incurred for subsistence and incidentals while away from home in the performance of their duties does not violate the constitution of Arizona"; (2) a similar concession is made as to *reimbursements* to members of the legislature who do not live away from home. However, as will be shown, the law relative to such claims has been changed in some important respects which creates an entirely new problem insofar as *constitutionality of the revised Act* is concerned.

The present statute relied upon by petitioners, insofar as pertinent, reads as follows:

*"Reimbursement of expenditures*

"A. Each member of the legislature, during sessions of the legislature, shall be allowed and receive in addition to any compensation and mileage as authorized by law a *reimbursement* for subsistence, incidentals, lodging and other expenses in aid of the performance of his duties and responsibilities as a legislator, as follows:

"1. If residing at his usual place of residence, not to exceed twelve dollars per day.

"2. If not residing at his usual place of residence, not to exceed seventeen dollars per day.

\* \* \* \* \* \*

"D. *Reimbursement* of expenditures made under the provisions of subsections A, \* \* \* of this section shall not be subject to the provisions of § 35–181.

"E. All payments provided for in this section shall be paid upon approval of the president of the senate or the speaker of the house of representatives from funds appropriated for the house of the legislature over which he presides." § 41–1103, A.R.S. (Emphasis supplied.)

It will be noted that under subdivision D, supra, such claims are purportedly exempt from the requirements of section 35–181, A.R.S., which, in part, reads:

"Article 5. Fiscal Procedures, Controls And Reports

"§ 35–181. *Presentation, approval and payment of claims and payrolls*

"A. All claims against the state for obligations authorized, required or permitted to be incurred by any state officer or agency, shall be paid only in the following manner:

"The claimant shall present an itemized claim, sworn to by him and approved by the head official of each office or state agency under which the obligation was incurred, or by some other person thereof, if expressly authorized to approve the claim. * * * The claim shall then be presented to the state auditor and, if approved, the auditor shall draw his warrant therefor on the state treasurer, who shall pay it when countersigned by the governor but only from the appropriation made therefor. * * *"

Petitioners' claims—refused by the auditor—are practically identical, varying only as to amounts claimed due (Senator Giss of Yuma County claims 7 days expenses at $17 per day or a total of $119; Representative Grimes, who resides at his usual place of residence in Tempe, claims 7 days expenses at $12 per day or a total of $84); each bear the signature of claimants and the approval thereof by the presiding officer of their particular legislative body. The body of such claims is as follows:

"Expense Voucher
        (Name of Legislative Body)
"State of Arizona
                23rd Legislature
                First Regular Session
"I, the undersigned, claim reimbursement for Subsistence, incidentals, lodging and other expenses in the aid of the performance of my duties and responsibilities as a member of
    (States the legislative body and
        amount claimed due).

This claim is made under the provisions of section 41–1103, A.R.S.

"(Signed by petitioner:

_____

                "Member of House of Representatives or Senate, respectively)

"I have examined the claim of ——— for reimbursement for Subsistence, incidentals, lodging and other expenses in aid of the performance of his duties as a Member of (stating legislative body) and approve the same for payment of the sum of ———, and direct that payment thereof be made

from funds appropriated for (the House of Representatives, or Senate respectively).

"Approved by:

_____

"(Speaker of the House of Representatives or President of the Senate, respectively)"

It will be noted that the claims are neither verified nor itemized, and no pretense is made to support the claimed reimbursement by attaching any vouchers or receipts. Petitioners contend that by reason of the enactment of section 41–1103, supra, they are not under a duty to meet the requirements attempted to be exacted by respondent. They maintain that inasmuch as there are no governing constitutional provisions, the method and manner in which claims are presented is a matter of legislative discretion, citing 81 C.J.S., States, § 198, and Hutchins v. Frohmiller, 55 Ariz. 522, 103 P.2d 956. They assert that when these claims showed upon the face thereof that they had been approved by the presiding officer of their respective legislative assemblies, the respondent had no legal right to disallow them, and that without her auditing same, these claims must be deemed to be for a public purpose, particularly after the Governor had given his written approval thereof. Hence, they conclude, if funds were available—which is admitted —it was the ministerial duty of respondent to pay same for the full amount. They say,

in effect, that if perchance in certain instances this law is being abused, and the constitutional provision as to increasing the compensation of legislators is indirectly violated, the sole remedy of the people is to "remove the legislators and at the same time insure the repeal of the law by a new legislature."

It is the position of respondent that upon this record the alternative writ of mandamus should be quashed upon one of the following grounds, viz.: (1) subdivisions D and E of section 41–1103, supra, are unconstitutional infringements upon the executive department, more specifically as to the state auditor; (2) subdivisions D and E thereof are severable; furthermore, they are reasonably susceptible of an interpretation that the approval of the presiding officer of the Senate and House merely meets the requirements of subsection B of section 35–181, supra, and hence, the state auditor is not prohibited from requiring the claims to be made in a form which will enable her to discharge the duties of her office pursuant to section 41–141, A.R.S.

Before considering the constitutional attack made upon subdivisions D and E of section 41–1103, supra, it might be well to restate the cardinal rules heretofore laid down by this court governing such an inquiry:

■ 1. Burden is on him who attacks constitutionality of legislation. American

Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912.

2. Generally, every legislative act is presumed to be constitutional and every intendment must be indulged in by the courts in favor of validity of such an act. Hudson v. Kelly, 76 Ariz. 255, 263 P.2d 362.

3. The Supreme Court will not declare a legislative act unconstitutional unless satisfied beyond a reasonable doubt of its unconstitutionality. Ibid.

4. The Arizona Legislature is vested with the legislative power of the state, and has plenary power to deal with any subject within the scope of civil government unless it is restrained by the provisions of the Constitution. Earhart v. Frohmiller, supra.

5. The questions of the wisdom, justice, policy or expediency of a statute are for the legislature alone. Brown v. Greer, 16 Ariz. 215, 141 P. 841; Smith v. Mahoney, 22 Ariz. 342, 197 P. 704; Earhart v. Frohmiller, supra.

We now address ourselves to the broad problem presented, i. e., do subdivisions D and E of section 41-1103, as construed by petitioners, provide for an unconstitutional infringement upon an executive department, viz., the auditor, and thereby make it impossible for respondent to determine whether the claims are consistent with and do not violate the constitutional provisions, Art. 4, part 2, sections 1 and 17, which prohibit the granting of extra compensation to public officers?

Article III, of the Constitution of Arizona, provides:

"The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

Article V, section 1 thereof, provides:

"The Executive Department shall consist of * * * State Auditor * * *."

and,

Article V, section 9, provides:

"The powers and duties of * * * State Auditor * * * shall be as prescribed by law."

Implementing the above constitutional provisions the legislature, in section 41-141 A.R.S., prescribed the powers and duties of the state auditor. This section reads, in part, as follows:

"A. The state auditor shall be the general accountant of the state and keeper of all public account books,

vouchers, documents and papers relating to accounts and contracts of the state, and to its revenue, debts and fiscal affairs, not required by law to be placed in some other office or kept by some other person.

\* \* \* \* \* \*

"C. The state auditor shall:

"1. Audit, adjust and settle the amount of claims against the state payable out of funds of the state, except claims expressly required by law to be audited and and settled by some other officer, and shall investigate any claim presented. If an investigation discloses that all or any portion of a claim is not for an actual public purpose connected with the activities of the office, board, commission or department in which the claim originated, he shall refuse to draw a warrant except for such amount as it appears is for an actual public purpose. \* \* \*"

█ It is apparent that section 35–181, supra (fiscal procedure statute), was designed to supplement section 41–141, inasmuch as the former prescribes the method of presentment and payment of claims against the state. As observed above, it is petitioners' contention that without the fiscal procedure statute the auditor has a mere ministerial duty, namely, to issue warrants. If this be true, by section 41–1103 the presiding officers of the two legislative bodies are assuming a limited role of auditor. True, this latter statute does not expressly state these legislative officers shall so function, but it was clearly contemplated by the creation of the constitutional office of auditor that someone should audit claims against the state, and section 41–141 states the state auditor shall perform this duty unless it is expressly required to be done by another. The only tenable position for petitioners is that the legislature, through its presiding officers, in effect audits its members' claims.

Therefore, it appears to us that the narrow determinative question is whether, under Article III of the State Constitution—relative to divisions of power—*the auditing* of claims against the state is a function or power properly belonging to the executive rather than the legislative department. If it is, then obviously, the legislature could not constitutionally enact subdivisions D and E of section 41–1103, supra, which purportedly place legislators in a favored class by giving to their presiding officers the ʉsive power to audit the claims of its members for *reimbursement* of expenditures claimed to have been made by them. Chief Justice Marshall, in speaking of the divisions of power, in Wayman v. Southard, 10 Wheat. 1, 6 L.Ed. 253, 263, laid down the basic distinction:

"The difference between the departments undoubtedly is, that the leg-

islature makes, the executive executes, and the judiciary construes the law; but the maker of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate and difficult inquiry, into which a court will not enter unnecessarily."

However, where, as here, the question is whether the constitutional inhibition has been violated, we have no option but to consider the matter and determine whether it falls on the one side or the other of the dividing line between constitutional and unconstitutional delegation of power. Cf. Udall v. Severn, 52 Ariz. 65, 79 P.2d 347. The problem presented is one of first impression in this jurisdiction and there is a complete dearth of authority from other jurisdictions on the precise question. It is true that in State ex rel. Johnson v. Baker, 74 N.D. 244, 21 N.W.2d 355, a case relied upon by petitioners, it was held the legislature could provide that its members' expenses be paid as were the regular per diem payments; the fact of such provision, it was concluded, showed the claims had been audited and approved. However, it was also stated that this practice had been followed since the first days of statehood in North Dakota; thus, the specific issue of the case at bar was not there determined.

We have only two decisions involving a claimed encroachment by the legislative department upon the executive branch of government. In the case of Dunbar v. Cronin, 18 Ariz. 583, 164 P. 447, 450, this court upheld the right of the legislature to appoint Con P. Cronin legislative librarian against a contention that such an appointment was for an executive function and, hence, violative of Article III of our Constitution. This court quoted with approval from an Oklahoma decision, Riley v. State, 43 Okl. 65, 141 P. 264, that held, in effect, the right to select and choose officers was a political question, and therein we stated the framers of the constitution had "surrendered that right to the different departments of state only in so far as the inherent necessities and proprieties seemed to require it." A similar situation arose, and the same constitutional objection was raised, when the legislature created the office of Post Auditor. In the case of Lockwood v. Jordan, 72 Ariz. 77, 231 P.2d 428, 433, relying upon the Cronin decision, we again upheld the validity of legislation whereby the president of the senate and speaker of the house of representatives, with the advice and consent of a majority of both houses, might appoint the person to fill such office. Furthermore, it was held therein that the legislature was not precluded from removing from the office of auditor certain duties relating to post auditor, particularly where many of the duties to be discharged by the post auditor were " 'for the primary purpose of informing the legislature for

its guidance in formulating legislative policies concerning legislation and appropriation.'"

Justice Phelps, speaking for the court in the Lockwood case, supra, evidently foresaw the instant problem when he stated:

"If and when legislation is passed imposing duties upon an officer of one of the coordinate branches of government which properly belong to either of the coordinate branches, article 3 of the Arizona Constitution may be invoked to preserve their independence." 72 Ariz. at page 85, 231 P.2d at page 433.

In the landmark decision of Hudson v. Kelly, supra, the Financial Administration Act of 1953, Laws 1953, c. 89, was under attack as the legislature had attempted to strip the independent constitutional office of State Auditor of practically all her duties by transferring same to the newly-created *executive officer,* viz., commissioner of finance, to whom the auditor would be subservient. One of the constitutional objections there made was that the Act violated sections 1 and 9 of Article V of the Constitution of Arizona, supra. We held the Act in its entirety to be unconstitutional and void. Justice LaPrade, in speaking for a unanimous court, very forcefully and logically laid down some basic principles which we believe to be controlling in the instant case. In speaking of the office of auditor, and the meaning of the word "audit", it was said:

"Clearly under the constitution the auditor is a member of the executive department of the state. Under our system of government, and of the state governments of the United States from the organization of the colonies and the states under our federal constitution, the offices of governor, secretary of state, state auditor, state treasurer and attorney general, have had a well-understood meaning and stature. They are words of long antiquity and in reference to officers of a government refer to offices occupied by these officers at common law.

"In Wright v. Callahan, 1940, 61 Idaho 167, 99 P.2d 961, 964, it was said:

"'At the time of the adoption and ratification of our Constitution the terms "state auditor" and "controller," as evidenced by the constitutions and statutes of that period, were generally and commonly understood to connote a supervising officer of revenue whose duties were to audit all claims against the state. We must presume that the framers of our Constitution so employed the term "state auditor".' Citing cases.

"The duties of a governmental auditor at common law are well set forth in People ex rel. Brown v. Green, 5 Daly, N.Y., 194, 200, where it is said:

" 'What is an auditor? Originally it meant an officer of the king, whose duty it was, at stated periods of the year, to examine the accounts of inferior officers and certify to their correctness, * * * and was afterwards used to designate those officers of the Court of Exchequer whose duty, according to Coke, was to take the accounts of the receivers of the king's revenue and "audit and perfect them," without, however, putting in any changes, their office being only to audit the accounts * * *. (4 Coke's Inst. 107.) The very object of examining and auditing an account is to ascertain whether there are any errors or mistakes in it, and hence the definition of the verb "to audit," which is to examine, settle and adjust accounts—to verify the accuracy of the statement submitted to the auditing officer or body. * * * "At the present day," says Wedgewood, one of the last writers upon the meaning of English words, "this term is confined to the investigation of accounts, the examination and *allowance* of which is termed the *audit*".'

"It was determined by this court in Shute v. Frohmiller, 1939, 53 Ariz. 483, 90 P.2d 998, that no common-law powers or duties attach to the above enumerated constitutional officers, but only those prescribed by statute. Nev-ertheless generally speaking, those duties that have been prescribed for the office of auditor have been those of auditing, adjusting and settling the amount of claims against the state and payable out of funds of the state. [Citing statutes.] * * * From the creation of the office to statehood it retained its original status as a free and independent executive office, to audit the accounts of the state.

"With the advent of statehood the auditor became a constitutional officer, with its incumbent being elected by the people and placed under bond. The duties of the officer now are and always have been those of general accountant of the state, and as such has long been termed 'the watchdog of the treasury'. Such officer has always been independent, responsible only to the law, his bond and the electors at the polls." 76 Ariz. at pages 260–262, 263 P.2d at page 365.

Much emphasis is placed by petitioners upon that statement in the Hudson case that no common-law powers or duties attach to the office of state auditor because it has only those prescribed by statute, and the further declaration that the legislature may enlarge or remove duties and powers of this office as might be necessary in the future. However, as to the latter it is stated such power is clearly not with-

out limitations. We would be remiss if the history of this office in our state and its description in common law were not considered. It was appropriate to do so in Hudson v. Kelly, supra, and is especially so now, for here we are confronted with a transfer of powers not merely from one executive office to another, but from one branch of government to another. To determine whether the function of "auditing" is one "properly belonging" to the executive department necessarily entails consideration of the history and common-law definition of the office, even though the office derives its powers and duties solely from the constitution and statutes. The long quotation from Hudson v. Kelly, supra, highlights the traditionally executive nature of "auditing".

This further statement from Hudson v. Kelly, supra, is equally enlightening:

"It was undoubtedly intended by the framers of our Constitution that in the matter of auditing the accounts of all public officials and state agencies that this function was to be performed by an officer independent of the officers and agencies to be audited. * * *" 76 Ariz. at page 262, 263 P.2d at page 366.

■■ Certainly this concept of an "independent audit" is violated in the Act under consideration. It is very essential that the sharp separation of powers of government be carefully preserved by the courts to the end that one branch of government shall not be permitted to unconstitutionally encroach upon the functions properly belonging to another branch, for only in this manner can we preserve the system of checks and balances which is the genius of our government. The result of attempting to withdraw from the state auditor and to place with a member of the legislature the right to "audit" the expense claims of the legislative department—one of the co-ordinate and equal branches of government—destroys, to that extent at least, this system of checks and balances. This court, in the case of Udall v. Severn, supra, stated:

"* * * Where the Constitution expressly, or by implication, confers a certain power on one of the great departments of the government, that power may not be delegated to another department * * *." 52 Ariz. at page 77, 79 P.2d at page 352. (Emphasis supplied.)

Cf. 16 C.J.S., Constitutional Law, § 167, p. 845.

In State ex rel. Proudfit v. Hastings, 10 Wis. 525, an Act was held unconstitutional by which a comptroller was appointed to examine and pass upon all claims and accounts audited by the secretary of state—which officer was the ex officio auditor of the state under the provisions of the Wisconsin Constitution. The court

there employed language which, while not controlling here, is of general application:

"Every positive delegation of power to one officer or department implies a negation of its exercise by any other officer, department or person. If it did not the whole constitutional fabric might be undermined and destroyed. This result could be as effectually accomplished by the creation of new officers and departments exercising the same power and jurisdiction as by the direct and formal abrogation of those now existing. And, although the exercise of this power by the legislature is nowhere expressly prohibited, nevertheless they cannot do so. The people having in their sovereign capacity exerted the power and determined who shall be their auditor, there is nothing left for the legislature to act upon." 10 Wis. at page 531.

There is no question but that the legislature constitutionally has "the power of the purse" as no one may expend public funds without legislative sanction; however, we cannot believe that the framers of our constitution ever intended that the legislative branch of the government should, as to the expense claims of its own members, perform the executive function of "auditing", nor that it was intended any claims for the expenditure of public funds be paid without an audit by some official of the executive department. That power, we hold, was delegated by the Constitution to the executive branch and impliedly placed in the hands of respondent. Subdivisions D and E of section 41–1103, A.R.S., are held to be unconstitutional and therefore void.

Mandamus lies only to compel an officer to perform a duty concerning which he has no discretion, and which he has refused to perform. Section 12–2021, A.R.S.; Hutchins v. Frohmiller, 55 Ariz. at page 528, 103 P.2d at page 958, supra. In the instant case we hold that mandamus will not lie because respondent auditor does have a discretion in the exercise of her duty in auditing petitioners' claims to determine whether they are excessive in amount and therefore inconsistent with the constitutional provision, Art. IV, part 2, section 17 prohibiting extra compensation.

The alternative writ of mandamus is quashed.

WINDES, PHELPS and LA PRADE, JJ., concur.

STRUCKMEYER, Justice (dissenting).

This court has many times stated that there are no duties connected with the offices enumerated in Article V, Section 9, of the Constitution of Arizona except those provided by legislative Act. In our leading case of Shute v. Frohmiller, 53 Ariz. 483, 90 P.2d 998, 1003, we said:

"Notwithstanding the holding in these cases, we are clearly of the view that the mere naming of the attorney general in the constitution of this state does not amount to an *implied restriction* on the authority of the legislature in prescribing his duties. * * *

"As just stated, the provision that the attorney general's powers and duties 'shall be as prescribed by law' is as much a part of the constitution as that portion of it creating the office itself and fully as binding, but it is a useless provision if it be true that the mere naming of the office in that instrument limits the legislature in prescribing the functions the person filling it must perform. Naturally the framers of the constitution intended, when they created the office of attorney general and made it elective, that its duties would be discharged by the person elected to it, but in view of the fact that they provided also at the same time and in the same instrument that his powers and duties should be 'as prescribed by law,' meaning by legislative act, *the intention was that he would perform the duties assigned him by the legislature. * * *"* (Italics mine.)

This decision was followed by many others approving and citing it as the law of this jurisdiction and culminated in unequivocal language used in Lockwood **v.** Jordan, 72 Ariz. 77, 83, 231 P.2d 428, 432:

" * * * The powers and duties of the auditor under the provisions of section 9 of article 5 shall be such as are 'prescribed by law'. No express restrictions are imposed upon the legislature by the constitution with respect to the powers and duties which shall be exercised by the state auditor. We have so often held that in the absence of such restrictions the legislature possesses *plenary* powers to enact such laws as its judgment may dictate that it is unnecessary to cite authorities to sustain it." (Italics mine.)

Since the only duties of the office of state auditor are those "prescribed by law," it is only necessary to determine what the law has prescribed in this case. By the provisions of Section 41–141, A.R.S.1956, quoted in the court's decision, the state auditor is required to "audit, adjust and settle the amount of claims against the state * * *." This would require the audit of the claims of members of the state legislature were it not for the subsequent Act of the twenty-second legislature, Section 41–1103, subd. E providing that "All payments * * * (for reimbursements of expenses of members of the legislature) shall be paid upon approval of the president of the senate or the speaker of the house of representatives * * *."

By this latter Act the legislature has eliminated from the duties of the state auditor the obligation of auditing legislative claims for reimbursement of expenses.

We are not here concerned with the wisdom of the legislative action. That is wholly within its discretion.

> "Finally, even if the law were one without safeguards and the threat of abuse seemed imminent, this Court has neither the power nor the authority to decide upon the desirability of the measure. We are confined solely to the question of its constitutionality." Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436, 439.

What has been said fully disposes of the contentions of the respondent and would be sufficient to conclude this matter were it not for the position adopted by the court in its decision.

The court rests its decision on the assumption that it is the duty of the executive department to audit claims against the state in this language and this language only " * * * but it was clearly contemplated by the creation of the constitutional office of auditor that someone should audit claims against the state, * * *." This assumption about the Constitution of this state is made without the support of any reasons or authority. It is, of course, insupportable being diametrically opposed to the construction of the Constitution as expressed in the foregoing quoted holdings of Lockwood v. Jordan and Shute v. Frohmiller and the many former decisions of this court. This court cannot have it both ways. Either it was contemplated by the framers of the Constitution that the duties of the offices enumerated in Article V, Section 9, were to be prescribed by the legislature or it was contemplated that the duties of these offices would be construed into the Constitution by the interpretations of the members of this court. I choose the former. If it is the latter, then the plain, simple language of the Constitution, that the powers and duties "shall be as prescribed by law", does not mean what it says.

It seems to me that the former decisions of this court are deserving of better treatment. There is some virtue in consistency. Without it the people of the state are compelled to wander through a maze of conflicting constructions dependent upon no certain rules for guidance save only that which may be deemed expedient for the moment. The alternative writ of mandamus heretofore issued should be made permanent.