311 P.2d 845

**Vada SCHWARTZ, doing business as My Florist, Petitioner,**

**v.**

**Jewel W. JORDAN, individually and as Arizona State Auditor, Respondent.**

No. 6433.

Supreme Court of Arizona.

May 14, 1957.

Otto H. Linsenmeyer and Stephen W. Connors, Phoenix, for petitioner.

Robert Morrison, Atty. Gen., and Oscar C. Rauch, Sp. Asst. Atty. Gen., for respondent.

LA PRADE, Justice.

Upon petition of Vada Schwartz, doing business as My Florist, an alternative writ of mandamus was issued by this court, directed to Jewel W. Jordan, as state auditor, commanding her to issue a warrant in payment of a claim for personal services and materials which petitioner had filed with respondent.

It appears from the petition for the writ that petitioner had sold and delivered to the State of Arizona a quantity of artificial flowers and flower boxes for decorating the chambers and two other rooms of the House of Representatives of the State of Arizona. The purchase was made by Mr. Harry Ruppelius, the then duly elected and acting speaker of the House of Representatives. The claim was duly itemized, sworn to and approved by Ruppelius, as the head official of the state agency under which the obligation was incurred. The petition also alleged that funds had been regularly appropriated and were available for the payment of the claim.

The auditor rejected the claim without assigning any reasons therefor, contrary to the provisions of subsection C of section 41-141, A.R.S., except to say that she had received a letter from Mr. W. L. Cook, successor to Ruppelius as speaker of the House of Representatives, wherein he observed that the purchase constituted rank extravagance and was not for a public purpose, and suggested that no warrant should be issued. The claimant again presented her claim which was again rejected without reasons being assigned therefor. After the second rejection the auditor, in an attempted compliance with section 41-141, subsec-

tion C, paragraph 1, A.R.S., transmitted the claim to the governor and advised him of her second rejection. The governor's response was in part as follows:

"* * * Inasmuch as the grounds for your rejection are not set forth, I must assume that you have found sufficient facts for rejecting the claim, and that your action was taken on the advice of the Attorney General.

"Under these circumstances, I do not feel justified in approving the claim in whole or in part. I am therefore returning it to you without my approval."

Upon receipt of the second rejection, as affirmed by the governor, the petitioner filed the petition herein. Respondent filed a written response to the writ in which all the allegations of the petition are admitted except the allegation that the materials purchased were for a public purpose. In this behalf she alleged that she had no power to approve the claim and issue a warrant therefor.

"* * * since there is no public purpose involved in the expenditure of the monies in question, for these flowers, flower designs and sprays."

In view of the law applicable and the allegations of the petition being admitted except for the allegation of "public purpose", it appears that only one question is presented, and that is: Do the artificial flowers, semi-permanent in nature, purchased for decorative purposes, fall within the classification of a "public purpose"? We have heretofore pointed out that

"* * * if a claim is 'on its face, for a public purpose and is properly itemized and accompanied by vouchers, and an appropriation has been made by law for that purpose, it is the mandatory duty of the auditor to approve said claim and to issue a warrant therefor; no discretion being given, if the matters recited beforehand appear in the claim as presented,' and this, of course, is true, for neither the auditor nor the governor may lawfully reject a claim which is for a public purpose, as we have defined it in the case of Ward v. Frohmiller, supra. * * *" Hutchins v. Frohmiller, 55 Ariz. 522, 529, 103 P.2d 956, 959.

We pointed out in Board of Regents of University and State Colleges v. Frohmiller, 69 Ariz. 50, 208 P.2d 833, 838, that the phrase "public purpose" was incapable of a fixed definition, and that

"* * * What is 'a public purpose' depends in part upon the time (age), place, objects to be obtained, modus operandi, economics involved, and countless other attendant circumstances. * * *"

We further observed that whether a purpose is a "public purpose" is determined in

each particular case from all the facts and circumstances. A "public purpose" has for one of its objectives the promotion of the public health, safety, morals, general welfare, security, prosperity and contentment of public employees or officers who are exercising the sovereign powers of the state in the promotion of public purposes or public business. Green v. Frazier, 44 N.D. 395, 176 N.W. 11, 17. The capitol building was erected for a "public purpose"—to house the public officials of the state and its employees and agents, and in carrying forth and prosecuting the manifold business and governmental activities of the state. The Constitution provides that the powers of the government of the State of Arizona

"* * * shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; * *." Article III, Constitution, A.R.S.

The legislative authority of the state (exclusive of initiative and referendum) is vested in the Legislature, consisting of the Senate and the House of Representatives. The state capitol was built and erected to, among other things, house the Legislature. We take judicial knowledge of the fact that at the time it was built it was provided with desks, chairs, tables, platform for presiding officers, and many other accoutrements that made it suitable and habitable for the purpose for which it was erected. The legislative chambers were painted and decorated,

and from time to time through the years have been refurbished and redecorated. All of the attendant circumstances impress those who are called upon to say what is and what is not a "public purpose". This brings in the factor of the human equation —the eyes, the conscience, and the philosophy of those called upon to judge. With these thoughts in mind we are moved to observe that, in determining whether the expense incurred as an incident to decorating the house chambers was of a kind authorized by law, the result to be obtained should be considered. It is a matter of common knowledge that the interior walls of public offices are painted and decorated. It cannot be said no public purpose was served in decorating the walls of the library in the capitol building with murals and the floors with carpets. The painting and decorating of the walls of public buildings is as common as the painting and decorating of our homes. The hanging of window draperies in public buildings is a matter of common practice, though not absolutely essential, and no one would argue but what they might be omitted. Nevertheless, it is not the way of our times to live in bleak halls. Pleasant circumstances and surroundings in public buildings are conducive to the well-being of public servants and to all the inhabitants of the state. Expenditures for decorative purposes are not objectionable as resting on aesthetic considerations.

It has been held that monies spent to protect scenic beauty and places of historic interest, memorial buildings, monuments, and other public ornaments designed merely to inspire sentiments of patriotism or of respect for the memory of worthy individuals is used for a "public purpose". Barrow v. Bradley, 190 Ky. 480, 227 S.W. 1016.

The necessity, expediency, advisability of policy actuating the creation of the debt is no official concern of the auditor or of this court. The expense incurred was in the field of discretion vested in the speaker of the House of Representatives. We have no hesitancy in holding that the materials here purchased were for a public purpose, and that no legal excuse existed for the disapproval of the claim. Accordingly, it is ordered that the alternative writ be made peremptory, commanding the auditor to forthwith approve the claim and issue a warrant in payment thereof.

WINDES and STRUCKMEYER, JJ., concur.

UDALL, Chief Justice and PHELPS, Justice (specially concurring).

We concur with the majority's holding on the only legal question presented, i. e., that the materials purchased, *as a matter of law,* were for a "public purpose", and we also agree the wisdom of such purchase is no concern of ours.

There is some doubt in our minds as to the authority of the "outgoing" speaker of the House, under the circumstances, to incur this eleventh-hour expense at a time when the House was not in session to give its approval. However, that point is not raised here and hence we cannot consider it.

UDALL, C. J., and PHELPS, J., concur.